ANTOINETTE M. RIDER
v.
KEVIN AMBEAU, SR., GEORGE GRACE, SR., AND THE CITY OF ST. GABRIEL
No. 2007 CA 0681.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
GAIL N. McKAY, Attorney for Plaintiff-Appellant, Antoinette M. Rider.
FREDERIC T. LE CLERCQ, BEVERLY A. DELAUNE, Attorneys for Defendants-Appellees, Kevin Ambeau, Sr., George, Grace, Sr., and The City of St. Gabriel.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
In this dispute arising out of the termination of the plaintiff, Antoinette M. Rider, from her employment with the St. Gabriel Police Department, Ms. Rider appeals a judgment of the trial court that granted summary judgment in favor of the defendants, Kevin Ambeau, Sr., and George Grace, Sr., and dismissed them from this suit, and further granted a partial summary judgment in favor of the defendant, the City of St. Gabriel (the "City") by dismissing Ms. Rider's disability and handicap discrimination claims against the City. For reasons that follow, we affirm in part and reverse in part the judgment of the trial court.

I. FACTUAL AND PROCEDURAL HISTORY
In May 1999, the City hired Ms. Rider to work for the St. Gabriel Police Department as a security officer. When Ms. Rider was originally hired, Patrick Nelson, Sr. was the Chief of Police for the St. Gabriel Police Department. After being hired, Ms. Rider completed several training courses, including the mandatory Peace Officer Standards and Training course ("POST" certification). In August 1999, Ms. Rider was promoted to police officer, and in June 2000, she was promoted to dispatcher supervisor.
Shortly thereafter, on June 29, 2000, while working as a patrol officer, Ms. Rider was injured in a motor vehicle accident. As a result of that accident, Ms. Rider sustained serious injuries that rendered her unable to work at the St. Gabriel Police Department for approximately one year.
As part of her recovery from her injuries, Ms. Rider worked with vocational rehabilitation specialists and attended a "work hardening program," which was explained by Dr. Kyle F. Dickson, Ms. Rider's treating physician, as intensive physical therapy aimed at helping Ms. Rider return to work more quickly. Dr. Dickson eventually cleared Ms. Rider to return to work at the St. Gabriel Police Department on "light duty" status. The St. Gabriel Police Department worked with Ms. Rider's vocational rehabilitation specialists and her treating physician in regards to Ms. Rider's work restrictions and her return to work. On July 23, 2001, Ms. Rider returned to work and was assigned a job as a desk sergeant.
As a desk sergeant, Ms. Rider's duties entailed processing warrants and traffic violations, transporting inmates to the Iberville Parish jail, photographing scenes during investigations, handling reports for other police officers, "booking" arrested persons, and working as a dispatcher. Ms. Rider remained in this position until July 3, 2003, when the St. Gabriel Police Department terminated her employment, purportedly as part of a reduction in force. At the time Ms. Rider's employment was terminated, Kevin Ambeau, Sr. ("Chief Ambeau") was the Chief of Police of the St. Gabriel Police Department, having just assumed the office two days earlier on July 1, 2003.
Although the notice of separation issued to Ms. Rider by Chief Ambeau indicated that Ms. Rider was terminated due to a reduction in force, on the same date that Ms. Rider was terminated, the St. Gabriel Police Department hired several new police officers. Additionally, on the same date Ms. Rider was terminated, six other employees of the St. Gabriel Police Department were also terminated.
On July 6, 2004, Ms. Rider filed a petition for damages, naming as defendants the City, Chief Ambeau, and George Grace, Sr. ("Mayor Grace"), the Mayor of the City of St. Gabriel.[1] In her petition, Ms. Rider asserted claims against the defendants for disability discrimination, handicap discrimination, religious discrimination, gender discrimination, sexual harassment, retaliatory discharge for making a complaint of sexual harassment, intentional infliction of emotional distress, and violations of La. R.S. 23:967 (the whistleblower statute) and Ms. Rider's constitutional right to due process.[2] In response, the defendants moved for summary judgment seeking to dismiss all of Ms. Rider's claims against all of the defendants.
At a hearing on December 7, 2006, the trial court granted summary judgment in favor of Chief Ambeau and Mayor Grace, dismissing all of Ms. Rider's claims against them and dismissing them from this suit. Additionally, the trial court granted partial summary judgment in favor of the City by dismissing Ms. Rider's disability and handicap discrimination claims against the City. However, the trial court took the motion for summary judgment with regard to Ms. Rider's remaining claims (i.e., her claims for religious discrimination, gender discrimination, sexual harassment, retaliatory discharge, intentional infliction of emotional distress, and violations of the whistleblower statute and due process) under advisement. On December 21, 2006, the trial court issued written reasons for judgment denying the City's motion for summary judgment with regard to the remaining claims.[3] A written judgment in conformity with the trial court's rulings of December 7 and 21, 2006 was signed on January 31, 2007, and it is from this judgment that Ms. Rider has appealed.[4]

II. ASSIGNMENTS OF ERROR
On appeal, Ms. Rider asserts that that the trial court erred: (1) in granting summary judgment in favor Chief Ambeau and Mayor Grace and dismissing them from this suit because they committed acts that were unreasonable violations of clearly established legal rules and were not entitled to immunity under La. R.S. 9:2798.1, and (2) in granting partial summary judgment in favor of the City and dismissing Ms. Rider's disability discrimination claims because she established a prima facie case of disability discrimination under La. R.S. 23:301, et seq. and La. R.S. 46:2251, et seq.

III. SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Craig v. Bantek West, Inc., XXXX-XXXX, p. 5 (La. App. 1st Cir. 9/17/04), 885 So.2d 1241, 1244; Western Sizzlin Steakhouse v. McDuffie, XXXX-XXXX, p. 3 (La. App. 1st Cir. 3/28/03), 844 So.2d 355, 357, writ denied, XXXX-XXXX (La. 6/20/03), 847 So.2d 1236. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather, to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La. 4/9/03), 842 So.2d 373, 377; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La. 2/29/00), 755 So.2d 226, 230. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La. App. 1st Cir. 11/19/03), 868 So.2d 96, 97, writ denied, XXXX-XXXX (La. 2/20/04), 866 So.2d 830.
The credibility of a witness is a question of fact, thus, a court cannot make credibility determinations on a motion for summary judgment. Boland v. West Feliciana Parish Police Jury, XXXX-XXXX, p. 5 (La. App. 1st Cir. 6/25/04), 878 So.2d 808, 813, writ denied, 2004-2286 (La. 11/24/04), 888 So.2d 231; Hutchinson v. Knights of Columbus, Council No. 5747, XXXX-XXXX, p. 8 (La. 2/20/04), 866 So.2d 228, 234; Independent Fire Ins. Co., 99-2181 at p. 16, 755 So.2d at 236. In deciding a motion for summary judgment, the court must assume that all of the witnesses are credible. Independent Fire Ins. Co., 99-2181 at pp. 16-17, 755 So.2d at 236. Furthermore, summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice, and should only be granted on such subjective issues when no issue of material fact exists concerning that issue. Rager v. Bourgeois, XXXX-XXXX, p. 6 (La. App. 1st Cir. 12/28/06), 951 So.2d 330, 333, writ denied, XXXX-XXXX (La. 3/23/07), 951 So.2d 1105; see also Jones v. Estate of Santiago, XXXX-XXXX, p. 6 (La. 4/14/04), 870 So.2d 1002, 1006.

IV. LAW AND DISCUSSION

A. Ms. Rider's Claims against Chief Ambeau and Mayor Grace
In the defendants' motion for summary judgment, they contended that the claims against Chief Ambeau and Mayor Grace should be dismissed because there is no genuine issue of material fact that Chief Ambeau and Mayor Grace were not Ms. Rider's "employers," as defined for purposes of the Louisiana Employment Discrimination Laws (La. R.S. 23:301, et seq.), and therefore could not be sued by Ms. Rider for such claims.
However, Ms. Rider contends that Chief Ambeau and Mayor Grace are properly named as defendants in this employment discrimination suit because they are the governing officials for the City, and therefore, are the proper representatives of the City in this action. In support of her contention, Ms. Rider relies on the provisions of La. R.S. 33:321, et seq. (the "Lawrason Act"), which set forth the duties and authority of municipal officers, such as the mayor and chief of police. Ms. Rider contends that because the Lawrason Act authorized both Chief Ambeau and Mayor Grace to make personnel recommendations, including the recommendation to terminate Ms. Rider, they are proper parties to this dispute.
While the Lawrason Act sets forth the duties of municipal officers, including the ability to make personnel recommendations, the Lawrason Act neither creates an employment cause of action against those officers nor renders them "employers" under Louisiana law. Instead, to determine whether Ms. Rider may assert claims against Chief Ambeau and Mayor Grace for alleged employment discrimination, Louisiana's law giving rise to those causes of action must be utilized.
An individual person who is not an "employer" cannot be sued under Louisiana's employment discrimination laws. See King v. Phelps Dunbar, L.L.P., 98-1805, pp. 4-5 (La. 6/4/99), 743 So.2d 181, 185. For purposes of Louisiana's employment discrimination laws, La. R.S. 23:302(2) defines an "employer" as:
[A] person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.
Accordingly, in order for Ms. Rider to sue Chief Ambeau and Mayor Grace for employment discrimination claims, Ms. Rider had to establish that Chief Ambeau and Mayor Grace, individually, received services from Ms. Rider and gave compensation to Ms. Rider. Based on our de novo review, we find the record devoid of such evidence. It is undisputed that neither Chief Ambeau nor Mayor Grace personally provided Ms. Rider with any compensation or benefits in exchange for her services as a St. Gabriel police officer. And, by Ms. Rider's own admission, her employer was the City. As there is no genuine issue of material fact that Chief Ambeau and Mayor Grace were not Ms. Rider's employers (for purposes of Louisiana's employment discrimination laws), summary judgment dismissing Ms. Rider's employment discrimination claims against Chief Ambeau and Mayor Grace was appropriate as a matter of law.[5]
Therefore, we hereby affirm that portion of the January 31, 2007 judgment of the trial court insofar as it granted summary judgment in favor of Chief Ambeau and Mayor Grace and dismissed them from these proceedings.

B. Ms. Rider's Disability Discrimination Claims Against the City
Louisiana Revised Statutes 23:323(A) provides that an otherwise qualified disabled person shall not be subjected to discrimination in employment based on a disability. In the defendants' motion for summary judgment, they contend that Ms. Rider will not be able to establish any of the necessary elements of her claim that her employer, the City, unlawfully discriminated against her because of her disability, and therefore, the City contends that it is entitled to summary judgment dismissing those claims.
In order to defeat a motion for summary judgment against an employment disability claim, the claimant must produce factual support to establish a prima facie case that: (1) she has a disability, as defined by the statute; (2) she is qualified for the job; and (3) an adverse employment decision was made solely because of the disability. Thomas v. Louisiana Casino Cruises, Inc., XXXX-XXXX, p. 3 (La. App. 1st Cir. 6/25/04), 886 So.2d 468, 470, writ denied, XXXX-XXXX (La. 10/29/04).

1. Disability
The threshold element of a claim for employment disability discrimination is whether the claimant meets the statutory definition of "disabled." Thomas, XXXX-XXXX at p. 3, 886 So.2d at 470. "'Disabled person' means any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment." La. R.S. 23:322(3). "'Major life activities' means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." La. R.S. 23:322(7).
The evidence establishes that on June 29, 2000, while Ms. Rider was working and responding to a dispatch, she was involved in an automobile accident. As a result of the accident, Ms. Rider sustained severe injuries to her left hip, left femur, and pelvis. Due to the severity of Ms. Rider's injuries, she underwent several surgeries. Although Ms. Rider underwent intensive physical therapy in order to return to work, Ms. Rider still walks with a limp. According to Dr. Dickson, Ms. Rider has developed "post-traumatic arthrosis," which is a "complete loss of the cartilage in her hip joint." And while she is presently "tolerating the pain" from this condition, she will likely need a "total hip arthroplasty" (a total hip replacement) in the near future. However, Dr. Dickson noted that at the present time, it would be "very difficult" for Ms. Rider to "do any type of running" with this condition.
According to the affidavit of Debrah LeBlanc, a licensed rehabilitation consultant, she conducted a vocational interview and assessment to determine the vocational potential of Ms. Rider. Based on Ms. Rider's medical information, educational background, and vocational history, Ms. LeBlanc opined that given Ms. Rider's restriction to sedentary work or a light work level, her potential jobs included unskilled type positions, such as an unarmed security guard, a gate security guard, a surveillance monitor, and general office clerk positions. Ms. LeBlanc also opined that Ms. Rider is unable to perform jobs that would be classified as medium work level or heavy work level, including but not limited to police officer, correctional officer, construction worker, child attendant institution, commercial or institutional cleaner or any industry, drives/sales worker, or laborer.
Additionally, Mayor Grace acknowledged in his deposition that he knew Ms. Rider was "disabled" or "had some form of disability" and that he "had done everything [he] could during the time Ms. Rider was disabled, [by] mov[ing] her to every kind of position [he] could[,] to enable her to function."
Based upon our de novo review of the above evidence, we find that Ms. Rider met her burden of establishing a prima facie case that she is disabled as defined by statute. The testimony offered by Ms. Rider establishes a genuine issues of material fact with regard to whether Ms. Rider has a physical impairment, that she was regarded by others, such as Mayor Grace as having such an impairment, and that this impairment substantially limits her major life activity of working.

2. Qualified for the Job
An "[o]therwise qualified disable person' means a disabled person who, with reasonable accommodation, can perform the essential functions of the employment position that such person holds or desires." La. R.S. 23:322(8).
The City contends that a patrol officer for the St. Gabriel Police Department must be able to patrol the roads, check buildings, take complaints, run radar, make arrests, transport arrestees, work accidents, write accident reports, perform traffic control, and perform any other duty authorized by the Chief of Police. And, because Ms. Rider cannot perform the essential duties of a patrol officer, such as apprehending criminals, running, driving a patrol car, or carrying a gun, she is unable to establish that she is qualified for the job. The City further contends that Ms. Rider's job as a desk sergeant and dispatcher was a "temporary" position for Ms. Rider due to her injuries, and that Ms. Rider was not hired as a dispatcher or a desk sergeant, but rather as a patrol officer. And therefore, to determine whether Ms. Rider was qualified for the job, the patrol officer requirementsnot the dispatcher requirementshad to be evaluated.
Louisiana Revised Statutes 40:2405 mandates that all police or peace officers in Louisiana "must successfully complete a certified training program approved by the council and successfully pass a council-approved comprehensive examination within one calendar year from the date of initial employment." This is generally referred to as being "POST certified."
According to the evidence, Ms. Rider received her POST certification on April 10, 2000, within one year of the date she was hired by the St. Gabriel Police Department. Additionally, Ms. Rider successfully attended and completed law enforcement training courses on domestic violence, firearm qualifications, adult and child first-aid, defensive tactics, hazardous material awareness, chemical weapons, vehicle stops, technical assistance on juvenile delinquency, dopplar radar operation, internal affairs, counter-terrorism, and chemical testing for intoxication.
Ms. Rider's employment records reveal that she was hired as a police officer (not a patrol officer) and was later made the "dispatcher supervisor." Additionally, the evidence demonstrates that Ms. Rider held the position of desk sergeant and dispatcher for approximately two years; therefore, it was not a "temporary" position, but an accommodation for her disabilities.
As desk sergeant and supervisor dispatcher, Ms. Rider's duties entailed processing warrants and traffic violations, transporting inmates to the Iberville Parish jail, photographing scenes during investigations, handling reports for other police officers, "booking" arrested persons, and working as a dispatcher. Ms. Rider indicated that the only duties of her job she could not perform were her patrol duties (including carrying a gun). Thus, the decision to eliminate Ms. Rider's patrol duties was an accommodation. And with that accommodation, Ms. Rider was able to performing the job of desk sergeant and dispatcher supervisor.
Based upon our de novo review of the above evidence, we find that Ms. Rider met her burden of producing factual support sufficient to establish a prima facie case that she was qualified for the job. The evidence offered by Ms. Rider established a genuine issue of material fact that she was a disabled person who, with reasonable accommodation could perform the essential functions of police officer or dispatcher supervisor.

3. Adverse Employment Decision Because of Disability
Lastly, Ms. Rider had to produce factual support establishing a prima facie case that an adverse employment decision was made solely because of her disability. The City contends that Ms. Rider was terminated because of a reduction in force due to the city council's budget reductions for the St. Gabriel Police Department.
Chief Ambeau's testimony established that at the time he took office on July 1, 2003, he needed to implement an immediate reorganization of the department and a reduction in force because the annual designated funds budgeted for operating the City of St. Gabriel Police Department decreased. However, other than avoiding the expense of retirement benefits, Chief Ambeau was unable to identify the budget reduction that he achieved by his personnel cuts, particularly after he admitted to hiring a new full-time assistant and several new part-time patrol officers.
Chief Ambeau testified that he presented his plan for the St. Gabriel Police Department's reorganization and reduction in force to the City for the first time at a public meeting on July 3, 2003. Chief Ambeau testified that his reorganization chart included the names of the department's personnel that he was keeping as well as the names of several new employees he wanted to hire, and at the meeting, he asked for approval to hire and "keep on" those employees. Chief Ambeau testified that his chart did not include the names of the employees selected for reduction in force. He testified that the reason he did not specifically identify the name of the employees chosen for termination was because he "didn't want to put the names out there because [he] thought it would be quite embarrassing to terminate people in a public meeting." He further testified that "[he] didn't call out the name[s]" but said "these are the people that [he] want[s] employed at the St. Gabriel Police Department," and "this is what [he] want[s] to run [his] office with, and [the city council] approved it." Mayor Grace read out loud the names listed on Chief Ambeau's proposed chart before the city counsel adopted the plan.
Chief Ambeau testified that he did not have access to and did not review any of the police department's personnel files, including Ms. Rider's file, prior to submitting his reorganization chart and reduction in force plan to the city council. Chief Ambeau testified that he based his decision to select the officers for the reduction in force because of his personal opinion that they were not good police officers.
As to one of the employees, Chief Ambeau testified that he received a letter from the "warden at Hunt's" concerning that employee harassing females and had worked with him in the sheriff's department and that was "the same reason [(sexual harassment)] they [(the sheriffs department)] got rid of him." As to the other employees, Chief Ambeau testified as to specific events he either witnessed or heard about involving these officers mistreating or mishandling people in the course of duty.
Chief Ambeau testified that when he made the decision to include Ms. Rider in the reduction in force, he had "never worked with her as a police officer." As to his reasons for selecting Ms. Rider for termination, Chief Ambeau testified that "[w]hen [he] took office, her job was desk sergeant and that position didn't exist in [his] police department," as his police department "needed people on the road." As to his belief that Ms. Rider was not patrolling and could not function as a patrol officer, Chief Ambeau testified that his belief was based on his personal observation that he "never seen her out there patrolling," his general knowledge that "a desk sergeant don't patrol," and his conversation after he took office (but before the July 3, 2003 public meeting), with Captain Tatney who told him that "she couldn't patrol" as she couldn't get in the cars anymore because the [guard] fence was too close" and "you can't push the seat back because of the guard fence." Chief Ambeau then testified that he "would have liked to have kept her, but [he] didn't have a position for a desk sergeant," he "had to put people on the road including [himself] that work shift," and Ms. Rider's inability to work as a patrol officer was "the only reason [he] didn't keep her."
Based upon our de novo review of the above evidence, we find that Ms. Rider met her burden of producing factual support sufficient to establish a prima facie case that an adverse employment decision was made by Chief Ambeau solely because of her disability. The evidence offered demonstrated a genuine issue of material fact as to whether Ms. Rider was terminated because of a reduction in force or whether she was terminated based on Chief Ambeau's perception that she could not work as a patrol officer.
Because we find genuine issues of material fact exist with regard Mr. Rider's disability discrimination claims against the City, as set forth above, the City was not entitled to partial summary judgment dismissing those claims. Therefore, we hereby reverse that portion of the April 3, 2007 judgment of the trial court that granted partial summary judgment dismissing Ms. Rider's disability discrimination claims against the City.

C. Ms. Rider's Handicap Discrimination Claims Against the City
Ms. Rider also asserted a claim against the City based on handicap discrimination pursuant to La. R.S. 46:2251, et seq., Civil Rights Act for Handicapped person. Prior to 1997, the requirements to establish a claim under La. R.S. 46:2256 were almost identical to the requirements set forth in La. R.S. 23:323(A), in that a plaintiff had to show: (1) that he was a handicapped person, (2) he was qualified for the job, and (3) he was discharged or otherwise discriminated against on the basis of the handicap, when it was unrelated to his ability to perform the duties of a particular job or position.
However, effective August 1, 1997, the Legislature amended La. R.S. 46:2252 to delete the reference to employment discrimination and to provide that such discrimination is now governed solely by the provisions of law relating to disability discrimination set forth in La. R.S. 23:321, et seq. See Delaney v. City of Alexandria, XXXX-XXXX, p. 1 n.1 (La. 11/28/01), 800 So.2d 806, 806 n.l. Thus, because Ms. Rider's discrimination claim against the City with regard to her impairment rests solely under La. R.S. 23:321, we find that the City was entitled to judgment as a matter of law dismissing Ms. Rider's handicap discrimination claims. Therefore, we hereby affirm the April 3, 2007 judgment of the trial court insofar as it dismissed Ms. Rider's handicap discrimination claims against the City.

V. CONCLUSION
For all of the above and foregoing reasons, we hereby affirm that portion of the January 31, 2007 judgment of the trial court which granted summary judgment in favor of the defendants, Kevin Ambeau, Sr. and George Grace, Sr., and dismissed them from this suit and granted partial summary judgment in favor of the City of St. Gabriel and dismissed Antoinette Rider's handicap discrimination claims against the City of St. Gabriel. However, we hereby reverse that portion of the January 31, 2007 judgment of the trial court that granted partial summary judgment in favor of the City of St. Gabriel and dismissed Antoinette Rider's disability discrimination claims against the City of St. Gabriel.
All costs of this appeal in the amount of $1,026.50 are assessed equally between the plaintiff, Antoinette M. Rider and the defendant, the City of St. Gabriel.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Ms. Rider's petition for damages inadvertently identifies Mayor Grace as the duly elected Mayor of the City of Ville Platte. However, the parties do not dispute (and the evidence in the record indicates) that Mayor Grace is the duly elected Mayor of the City of St. Gabriel.
[2] The defendants removed Ms. Rider's suit to United States district court. Although the record before us does not contain any pleadings from the United States district court, the defendants assert (and Ms. Rider does not dispute) that Ms. Rider subsequently agreed to dismiss the federal claims that she asserted against the defendants, and therefore, her suit was remanded to the state district court from which it was removed.
[3] The City filed an application for supervisory writs with this court in regards to the trial court's denial of the motion for summary judgment on the remainder of Ms. Rider's claims. This court granted the writ in part, reversed that portion of the trial court's judgment denying summary judgment on Ms. Rider's claims for religious discrimination, sexual (and religious) harassment, retaliatory discharge, intentional infliction of emotional distress, and violations of the whistleblower statute and due process, and granted summary judgment in favor of the City dismissing those claims. However, this court denied the writ with regard to the denial of summary judgment on Ms. Rider's claims against the City for gender discrimination on the basis that genuine issues of material fact remained with regard to that claim. See Rider v. Ambeau, 2007-CW-0097 (La. App. 1st Cir. 5/14/07)(unpublished writ action).
[4] The January 31, 2007 judgment of the trial court was a final judgment under La. C.C.P. art. 1915(A)(1) insofar as it dismissed defendants Chief Ambeau and Mayor Grace from these proceedings, and therefore, was subject to an immediate appeal. See La. C.C.P. art. 2083. However, with regard to the partial summary judgment granted in favor of the City on Ms. Rider's claims for disability and handicap discrimination, the judgment was not a final judgment (and therefore not subject to an immediate appeal) unless the trial court designated the judgment as a final judgment after an express determination that there was no just reason for delay. See La. C.C.P. art. 1915(B). Initially, in this case, the trial court did not designate the partial summary judgment as a final judgment subject to an immediate appeal in the written judgment; however, it did (unnecessarily) designate the judgment as final in the order of appeal. As the appellate jurisdiction of this court extends only to final judgments, while this appeal was pending, this court issued an interim order remanding this matter to the trial court for the limited purpose of having the trial court designate, in a written judgment, that the grant of the summary judgment with regard to Ms. Rider's disability and handicap discrimination claims was a final judgment with no just reasons for delay as required by La. C.C.P. art. 1915(B), and the record on appeal was subsequently supplemented with said judgment. Based on our de novo review of the matter, we find that the trial court properly certified this judgment as final for purposes of an immediate appeal. See R.J. Messinger, Inc. v. Rosenblum, XXXX-XXXX, pp. 13-14 (La. 3/2/05), 894 So.2d 1113, 1122-23.
[5] Because we find summary judgment dismissing Chief Ambeau and Mayor Grace from this suit was appropriate as a matter of law since they were not Ms. Rider's "employers," we pretermit discussion of whether they were entitled to summary judgment dismissing them from this suit on the basis that the were entitled to qualified immunity under La. R.S. 9:2798.1(B).