WELCH, J.
|?In this dispute arising out of the termination of the plaintiff, Antoinette M. Rider, from her employment with the St. Gabriel Police Department, Ms. Rider appeals a judgment of the trial court that granted a motion for summary judgment in favor of the defendant, United National Insurance Company (“United National”), the alleged liability insurer of the City of St. Gabriel (“the City”), on the grounds that the insurance policy did not provide coverage for the plaintiff’s claims, and dismissed the plaintiff’s claims against it with prejudice. We reverse the judgment of the trial court and remand for further proceedings.
I. FACTUAL AND PROCEDURAL HISTORY
The factual and procedural history of this case is more fully set forth in this court’s earlier opinion, Rider v. Ambeau, 2007-0681 (La.App. 1st Cir.12/21/07), 973 So.2d 177 (unpublished), writ denied, 2008-0814 (La.3/14/08), 977 So.2d 937. Essentially, in May 1999, the City hired Ms. Rider to work for the St. Gabriel Police Department as a security officer, and after completing several training courses, she received several promotions. On June 29, 2000, while working as a patrol officer, Ms. Rider was injured in a motor vehicle accident and sustained injuries that rendered her unable to work at the St. Gabriel Police Department for approximately one year. Eventually, Ms. Rider was cleared by her treating physician to return to work on “light duty” status, and on July 23, 2001, Ms. Rider returned to work at the St. Gabriel Police Department as a desk sergeant. Ms. Rider remained in this position, until July 3, 2003, when the St. *852 Gabriel Police Department terminated her employment, purportedly as part of a reduction in work force, although a new chief of the St. Gabriel Police Department, Kevin Ambeau, Sr. (“Chief Ambeau”) had just assumed office two days earlier on July 1, 2003. On the same date that Ms. Rider was terminated, six other employees of the St. Gabriel Police Department were terminated and several new police officers were Isihired.
On July 6, 2004, Ms. Rider filed a petition for damages, naming as defendants the City, Chief Ambeau, and George Grace, Sr. (“Mayor Grace”), the Mayor of the City. In her petition, Ms. Rider asserted claims against the defendants for disability discrimination, handicap discrimination, religious discrimination, gender discrimination, sexual harassment, retaliatory discharge for making a complaint of sexual harassment, intentional infliction of emotional distress, and violations of La. R.S. 23:967 (the whistleblower statute) and Ms. Rider’s constitutional right to due process. Ms. Rider sought compensation for her lost income and benefits, loss of earning capacity, and past, present, and future medical expenses, pain and suffering, severe emotional distress, humiliation, embarrassment, and mental anguish. Additionally, she sought reinstatement to her former position with the St. Gabriel Police Department.
All of Ms. Rider’s claims against Chief Ambeau and Mayor Grace were eventually dismissed. See Rider, 2007-0681 at p. 4, 973 So.2d 177. Additionally, Ms. Rider’s claims against the City for religious discrimination, sexual and religious harassment, retaliatory discharge, intentional infliction of emotional distress, handicap discrimination, and violations of the whis-tleblower statute and due process were dismissed. See Rider v. Ambeau, 2007-0097 (La.App. 1st Cir.5/14/07) (unpublished unit action) and Rider, 2007-0681 at p. 2 n. 3 and p. 9, 973 So.2d 177. Therefore, Ms. Rider’s only remaining claims (against the City) are her claims for disability discrimination and gender discrimination. See Rider, 2007-0097 (unpublished unit action) and Rider, 2007-0681 at p. 2 n. 3 and p. 8, 973 So.2d 177.
On July 13, 2009, Ms. Rider filed a supplemental and amended petition adding as a defendant, United National. In this petition, Ms. Rider alleged that United National had issued a Public Officials Professional and Employment Practices Liability Policy (“POP-EPL”) to the City, which was in effect at the |4times relevant to Ms. Rider’s claims.[1] On March 15, 2010, United National filed a motion for summary judgment[2] seeking a determination that it was not obligated to indemnify *853 the City against the damages sought by Ms. Rider because her requests for relief (reinstatement as a patrol officer, sanctions, back and future wages and related benefits, loss of earning capacity, and damages for past, present, and future severe emotional distress, humiliation, embarrassment, mental anguish, and pain and suffering) fell within policy exclusions, which United National claimed were clear and unambiguous. Further, United National contended that under the policy, its only obligation is to provide the City with a defense.
On June 24, 2010, the trial court issued written reasons granting the motion for summary judgment.[3] In its reasons for judgment, the trial court stated that it was granting the summary judgment “begrudgingly” and found it “incredulous that as a consumer, the City, ha[d] purchased a policy such as” the policy at issue because the “policy cover[ed] no circumstances for which under the laws of Louisiana that an insured/employer may be sued and made to indemnify.” Further, the trial court noted that “[i]t seem[ed] as though, what [was] no doubt hefty | r,premiums expended by the citizens of St. Gabriel have been paid solely to an insurance company to defend the insured against claims for which the policy would never cover.” Lastly, the trial court stated that “it would have been better and would have made more sense if the City had known up front that the policy would not cover such circumstances as this case and would not have purchased this type of insurance” as “[t]he monies [it] could have saved on premiums could have been used to compensate for damages.”
On August 5, 2010, the trial court signed a judgment in favor of United National and against Ms. Rider granting United National’s motion for summary judgment and dismissing all demands against United National with prejudice. It is from this judgment that Ms. Rider appeals.[4]
On appeal, Ms. Rider contends that the trial court erred in granting United National’s motion for summary judgment because the policy provisions are vague and ambiguous and can be interpreted so as to afford coverage for Ms. Rider’s claims (thus rendering summary judgment inappropriate) and because the policy provisions violate public policy by restricting coverage to the extent that it affords no coverage for any injuries that it purports to insure. United National contends that there is no coverage for any of the plaintiffs gender discrimination and disability *854 discrimination claims based on policy exclusions “d.,” “j.,” and “m.” (as replaced and amended by several endorsements to the policy). Further, United National contends that the policy in this case is a “defense-only” policy, meaning it was purchased solely to provide a legal defense for the City in the event of a lawsuit and was not meant to provide indemnification or to be a source of payment for damages to an injured plaintiff.
|JI. LAW AND DISCUSSION
On appeal, summary judgments are reviewed de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Lieux v. Mitchell, 2006-0382 (La.App. 1st Cir.12/28/06), 951 So.2d 807, 314, writ denied, 2007-0905 (La.6/15/07), 958 So.2d 1199. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181 (La.2/29/00), 755 So.2d 226, 230-231.
A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages. See La. C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Insurance Company, 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which coverage could be afforded when applied to the undisputed material facts shown by the evidence supporting the motion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. See La. C.C.P. art. 966(C)(2); Buck’s Run Enterprises, Inc. v. Mapp Construction, Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment must prove some provision or exclusion applies to preclude coverage. Gaylord Chemical Corporation, v. ProPump, Inc., 98-2367 (La.App 1st Cir.2/18/00), 753 So.2d 17349, 352; see also Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd’s of London, 616 So.2d 1250, 1252 (La.1993) (providing that it is the insurer who bears the burden of proving that a loss falls within a policy exclusion).

A. Interpretation of Insurance Policies

An insurance policy is a contract between the parties and should be construed using the general rules of contractual interpretation. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The judicial responsibility in interpreting insurance contracts is to determine the common intent of the parties. See La. C.C. art. 2045; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759, 763. Insurance policies should be interpreted to effect, not deny coverage. Yount v. Maisano, 627 So.2d 148, 151 (La.1993). If the words of the policy or insurance contract are clear and explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. When absurd results are possible from *855 such a reading, however, the contract is ambiguous, and the courts must construe the provision in a manner consistent with the “nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.” La. C.C. art. 2058; Doerr v. Mobil Oil Corp., 2000-0947 (La.12/19/00), 774 So.2d 119, 124. The determination of whether a contract is clear or ambiguous is a question of law. McMath v. Construction Company, Inc. v. Dupuy, 2003-1418 (La.App. 1st Cir.11/17/04), 897 So.2d 677, 681, writ denied, 2004-3085 (La.2/18/05), 896 So.2d 40.
Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning Isthat renders it effective and not with one that renders it ineffective. La. C.C. art. 2049. If there is ambiguity in an insurance policy, it must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding the other policy provisions. See La. C.C. art. 2050; Louisiana Insurance Guaranty Association, 630 So.2d at 763. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). If after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the insured. See La. C.C. art. 2056; Louisiana Insurance Guaranty Association, 630 So.2d at 764. Under this rule of “strict construction,” equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer. However, for the rule of strict construction to apply, the policy must be susceptible of two or more interpretations. See Bonin v. Westport Insurance Corporation, 2005-0886 (La.5/17/06), 930 So.2d 906, 911.

B. The United National Public Officials Professional and Employment Practices Liability Policy

The policy issued to the City is captioned or titled as a “Public Officials Professional and Employment Practices Liability” policy. As its caption indicates, the policy is a policy of liability insurance. See Quinlan v. Liberty Bank and Trust Co., 575 So.2d 336, 338 (La.1990) (providing that the caption of an insurance policy is pertinent in determining the nature of the policy). Louisiana Revised Statutes 22:1269(D) expresses Louisiana’s public policy and the purpose of liability insurance: “[A]ll liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give 19protection and coverage to all insureds ... for any legal liability the insured may have as or for a tortfeasor within the terms and limits of the policy.”
POP-EPL insurance policies are purchased by public entities, among other reasons, in an attempt to protect against losses that may result from employment related practices, policies, acts or omissions, such as refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, or discrimination. (See definition of “employment practices wrongful acts” set forth in the United National POP-EPL policy, Section VI.2).
With these precepts in mind, we examine the relevant policy provisions. Section *856 1.1 of the POP-EPL policy issued to the City sets forth the duty of the issuer of the policy and the purpose behind its purchase:
We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages resulting from claims, to which this insurance applies, against the insured by reason of public officials wrongful acts or employment practices wrongful acts rendered in discharging duties on behalf of the public entity named in the Declarations. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. ... We will have the right and duty to defend any suit seeking those damages. However, we will have no duty to defend any suit seeking damages to which this insurance does not apply.
“Damages” is defined at Section VI.2 to include, but not be limited to “money damages, judgments and settlements, consequential damages, and subject to all policy terms and conditions, any plaintiff attorney fees awarded again[st] the insured” and “do not include criminal and civil fines or penalties,” “[tjaxes,” “[sjalaries, wages or overhead expense of any insured,” or “[ajmounts uninsurable under applicable law according to which this policy may be construed.” “Damages” is not defined to include defense costs, which are defined at Section VI.4 as a “loss adjustment expense.”
“Employment practices wrongful acts” is defined as “any actual or 1I0alleged errors, misstatements, misleading statements, acts or omissions, neglect or breach of duty, individually or collectively including actual or alleged: (a) [rjefusal to employ; (b) [tjermination of employment; (c) [cjoercion, demotion, evaluation, reassignment, discipline, defamation, harassment, discrimination or other employment-related practices, policies, acts or omissions; or (d) [cjonsequential damages as a result of a. through c.;” and “also includes any obligation to share damages with or to repay someone else who must pay damages.” “[Ejmployment practices wrongful acts does not include public officials wrongful acts.” Section VI.2
So, relevant to our analysis, the insuring agreement provides the City with protection from “damages” resulting from “claims” by reason of “employment practices wrongful acts”, and provides the City with a defense only for “claims” seeking those covered “damages.” In this context, we find that the Louisiana Supreme Court’s explanation of the purpose of liability insurance and a business owner’s intent when purchasing a Commercial General Liability (CGL) policy in Doerr, 774 So.2d at 127 is equally applicable to a public entity purchasing a POP-EPL policy:
[Public entities] rely on these policies to protect them against claims and losses which might otherwise force insolvency or prompt serious losses. The insurance company, on the other hand, agrees to absorb liability to which the [public entity] might otherwise be exposed in return for a premium which, along with the premiums of other insureds, is designed to adequately spread potential losses among all of the insurer’s clients. These [public entities] come to rely on the liability policies because, without them, a single large claim might force insolvency or an intolerable monetary loss. Consequently, [public entities] expect that any exclusions within their policy will be read reasonably and with due regard to the intent of the policy as a whole.
[[Image here]]
*857 Both liability insurers and their insureds have certain expectations regarding issuance of a [POP-EPL] policy. The liability insurer expects premiums in exchange for a certain level of risk, and the insureds expect to be insulated generally from liability claims.
|nIn the instant case, for a premium of $11,265, United National issued a claims made policy of POP-EPL insurance to the City for the policy period, April 19, 2004 to April 19, 2005, with limits of insurance of “$1,000,000” for “Each Public Officials Claim,” “$1,000,000” for “Each Employment Practices Claim,” and “$1,000,000” for “Annual Aggregate,” with a deductible in the amount of “$7,500” for “Each claim including L.A.E. (loss adjustment expense — which is defined by the policy to include “legal services, court costs, and other similar expenses”). Thus, it was reasonable for the City to expect to be defended and insulated generally from damages resulting from claims by reason of “employment practices wrongful acts,” and specifically from liability for certain damages arising out of Ms. Rider’s claims for disability discrimination and gender discrimination.
Instead, the insurer included numerous endorsements in the policy that, pertinent to this case, modified and replaced exclusions “d.,” “j.,” and “m.” in an admitted attempt to exclude all liability coverage, including liability for all damages, from the POP-EPL policy. Notwithstanding the type and purpose of the insurance purchased, United National claims that the City paid an $11,265 premium for a “defense-only” policy with a $7,500 deductible for each claim, including loss adjustment expense, i.e. defense costs.
Mindful of the rules of interpretation of insurance policies, we find that a blind application of the pertinent endorsements modifying exclusions “d.,” “j.,” and “m.” in the United National POP-EPL policy so as to exclude all liability coverage would thwart the very purpose of the POP-EPL policy, would eliminate the usefulness of the policy as one expected to cover at least some liability, would render the intended liability coverage illusory, would violate the reasonable expectation of the City when it purchased the POP-EPL policy, and would clearly lead to the absurd consequence of transforming a liability policy into a “defense-only” policy.
|]2We find that it is absurd for a liability policy, such as the POP-EPL policy at issue, to exclude all coverage for the insured’s liability, if any, to a claimant. If the City wanted to purchase, and United National wanted to issue, a “defense-only” policy, the parties were free to so contract. Furthermore, if United National intended, as it so argues, to transform its liability policy into a “defense-only” policy, it could have clearly and unambiguously stated such intent either in the policy itself or in an endorsement. However, it did not do so. Instead, it issued multiple endorsements referencing damages, thus bolstering the reasonable expectations of its insured that liability coverage was in fact being purchased.
Additionally, when United National issued a liability policy to the City, and then attempted to exclude by endorsement, coverage for any and all types of liability, the liability coverage would become “illusory” from the standpoint of the insured and would violate the public policy of this State. See generally Boullt v. State Farm Mut. Auto. Ins. Co., 99-0942 (La.10/19/99), 752 So.2d 789 (“By allowing State Farm to collect separate premiums from each of the Boullts on their individual policy covering different risks and then deny recovery to the insureds under the polices would be tantamount to State Farm issuing illusory coverage to the *858 parties, providing the insureds with less coverage than he or she paid for, and would clearly violate the reasonable expectation of the contracting parties”); Doerr, 774 So.2d 119, 127 (“A literal reading of the total pollution exclusions would alter the general scope and expectation of the parties” and “would thwart the very purpose” of the CGL policy); Ducote v. Koch Pipeline Co., L.P., 98-0942 (La.1/20/99), 730 So.2d 432, 438, overruled by Doerr, 774 So.2d 119 (Kimball, J. dissenting: “I disagree with the majority’s characterization of the pollution exclusion at issue as unambiguous and with its holding that construes the exclusion so as to preclude coverage in this case. The majority’s resolution of the issue presented is, in ray view, shortsighted, for its blind application of the language of | iathe pollution exclusion undoubtedly leads to absurd results”); Orleans Parish School Bd. v. Scheyd, Inc., 95-2653 (La.App. 4th Cir.4/24/96), 673 So.2d 274, 279 (“It would be illogical, and perhaps against public policy, to provide a specific coverage, collect a premium, then by way of endorsement, totally exclude that coverage”); and Gaylord Chemical Corporation, 753 So.2d at 356, citing Orleans Parish School Bd. (“[Tjhat if the policy exclusions are enforced in the manner suggested by Commercial Union, the products-completed operations hazard protection would be virtually worthless ... despite ... payment of a premium of almost $5000 per year for this coverage”).
We find that the endorsements at issue that modify and replace exclusions “d.,” “j.,” and “m.” in the POP-EPL policy in this case are ambiguous because a literal reading and application would lead to the absurd consequence of excluding all liability coverage for all damages for all acts, including “public officials wrongful acts” and “employment practices wrongful acts.” Therefore, our judicial responsibility is to attempt to determine the true meaning and interpretation of the exclusions, narrowly and in the insured’s favor so as to render the contract effective. See Doerr v. Mobil Oil Corp., 774 So.2d at 125.

1. Exclusions in the Original Policy.

As would be expected by a reasonable policy purchaser, the POP-EPL policy, without the endorsements at issue, provides coverage for claimed damages by reason of public officials wrongful acts or employment practices wrongful acts, as defined, rendered in discharging duties on behalf of the City. Also as would be expected by a reasonable policy purchaser, the exclusions portion of the policy contains the following restrictions of coverage from certain claims or suits which could reasonably be expected to be excluded, i.e. claims for lost wages and costs, attorney fees of the claimant, or other claims which are typically covered by other types of insurance, such as general liability for damages arising from Impersonal injuries, that the insured could otherwise purchase at its option:
2. Exclusions
This insurance does not apply to any claim or suit made against the insured:
[[Image here]]
d. For any damages arising from bodily injury, sickness, emotional distress, mental anguish, humiliation, disease or death of any person or W[sic] damages to or destruction of any property, including diminution of value or loss of use. However, this exclusion does not apply to emotional distress, mental anguish or humiliation relative to actual or alleged employment practices wrongful acts,
[[Image here]]
j. Seeking relief or redress in any form other than compensatory damages. We *859 will not have any obligation to pay on behalf of the insured any cost, fees, in-eluding insured’s and claimant attorneys’ fees, or expenses which the insured shall become obligated to pay as a result of any claim or suit for injunctive relief, declaratory relief, or claims or suits seeking relief or redress in any form other than compensatory damages; however, we will afford defense to the insured for such claims or suits, if not otherwise excluded, where compensatory damages are requested. Subject to SECTION III — SUPPLEMENTARY PAYMENTS, paragraph 7, we will defend claims seeking non-monetary relief relative to employment practices wrongful acts.
[[Image here]]
m. For future wages, overtime, or similar claims, even if designated as liquidated damages, or claims or suits arising from collective bargaining agreements.

2. The Endorsements Modifying and Replacing the Exclusions in the Original Policy.

Where the reasonable expectations of the parties clearly come into question, and where the absurdity of United National’s interpretation of its liability policy as “defense-only” becomes apparent, are in the ambiguous endorsements that purport to modify the original exclusions in the policy to exclude liability coverage for any and all types of damages, regardless of the source or theory of liability, and render the coverage afforded by the policy “defense-only.” This was clearly not the intention of the City when it contracted for POP-EPL insurance. As set forth («above, each ambiguous endorsement is to be narrowly construed in favor of the insured and in favor of the insured’s reasonably expected and intended coverage.
Endorsement PGU-POL-105 (11/00), which is entitled “EMPLOYMENT PRACTICES PERSONAL INJURY RESTRICTION” modifies the insurance contract by removing and replacing original exclusion d. with the following:
d. For any damages arising from bodily injury, sickness, emotional distress, mental anguish, humiliation, disease or death of any person, or for damages to or destruction of any property, including diminution of value or loss of use.
The only change effected by this endorsement is the removal of the inadvertent “W” in the first sentence and deletion of the following reasonably expected exception to the exclusion: “However, this exclusion does not apply to emotional distress, mental anguish or humiliation relative to actual or alleged employment practices wrongful acts.” By virtue of the deletion of the exception to exclusion “d.,” United National interprets its policy to exclude coverage for all of Ms. Rider’s claimed discrimination “damages”[5] arising out of the City’s alleged “employment practices wrongful acts.” However, this interpretation leads to a disallowed absurd consequence because the specific coverage afforded in the insuring agreement, subject to reasonable exclusions, is totally excluded from coverage by way of endorsement. See Gaylord Chemical Corp., 753 So.2d at 356; and Seals v. Morris, 423 So.2d 652, 656 (La.App. 1st Cir.1982). Instead, the reasonable interpretation of the *860 modified exclusion that does not lead to absurd or illogical consequences is that it was designed to remove the typographical error contained in the original exclusion and to make it clear that the restriction on coverage for “employment practices wrongful acts” is limited to claims for damages arising from personal injury, as clearly stated in the title of the | ^endorsement. Personal injury is not a defined term in the policy, so we give it its plain, ordinary, and generally prevailing meaning. La. C.C. art. 2047. “Personal injury” is defined by BlaoK’s Law DictionaRY 802 (8th ed.2004) in pertinent part, as follows: “1. In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury. 2) Any invasion of a personal right, including mental suffering and false imprisonment. — Also termed private injury.”
Applying this definition is entirely consistent with the endorsement’s title, which in addition to modifying exclusion “d.” (as stated above), also modifies exclusion “e.” which addresses invasions of personal rights, ie., false arrest, false imprisonment, libel, slander, defamation, invasion of privacy, wrongful eviction, assault, battery, malicious prosecution, or abuse of process.
Thus, a reasonable interpretation of the policy provisions in light of each other so that each provision is given the meaning suggested by the POP-EPL insurance contract as a whole reveals that the term “damages” in modified exclusion “d.” refers to the enumerated damages arising from personal injury that should be covered by other types of liability policies available for the insured to purchase, rather than to the enumerated damages arising from discrimination related to “employment practices wrongful acts” which is expected to be covered by the POP-EPL policy. See La. C.C. art. 2050.
Therefore, since the term “personal injury” does not encompass discrimination, the modified exclusion “d.” as applied to this case does not restrict coverage for damages related to discrimination, but only restricts coverage for the enumerated damages related to personal injury. With this in mind, we look to the next endorsement at issue.
Endorsement PGU-POL-104 (11/00), which is entitled “EMPLOYMENT PRACTICES NON-MONETARY RELIEF SUPPLEMENTARY INPAYMENTS RESTRICTION,” modifies the insurance contract by removing and replacing original exclusion “j.” with the following:
Seeking relief or redress in any form other than compensatory damages. We will not have any obligation to pay on behalf of the insured any costs, fees, including insured’s and claimant attorneys fees, or expenses which the insured shall become obligated to pay as a result of any claim or suit for injunctive relief, declaratory relief, or claims or suits seeking relief or redress in any form other than compensatory damages; however, we will afford defense to the insured for such claims or suits, if not otherwise excluded, where compensatory damages are requested.
While denying coverage for claims for damages, United National claims that this endorsement forms the basis for its duty to defend such claims, including this one for discrimination damages. We disagree. This endorsement reasonably excludes coverage from any claim or suit seeking relief or redress in any form other than compensatory damages, but clarifies that any suit for such redress, accompanied by a claim for compensatory damages, will still be defended. This endorsement cannot be considered in isolation, but must be considered in the context of the policy as a *861 whole. See La. C.C. art. 2050; Halphen v. Borja, 2006-1465 (La.App. 1st Cir.5/4/07), 961 So.2d 1201, 1205, writ denied, 2007-1198 (La.9/21/07), 964 So.2d 388. Under this endorsement, a condition precedent to United National’s duty to defend is coverage for alleged compensatory damages. Under the insuring agreement, United National owes a duty to defend any suit against the City seeking damages resulting from claims, to which this insurance applies, by reason of “public officials wrongful acts” or “employment practices wrongful acts.” Liability for “damages” is set forth in the insuring agreement, as restricted by modified exclusion “d.,” as reasonably interpreted in favor of the insured, as set-forth above. If no damages can ever be owed by United National, as it claims, then no defense would ever be owed, even for suits seeking relief or redress in any form other than compensatory damages. However, United National does not even take this untenable position and unequivocally admits that it owes the City a |1Rdefense against Ms. Rider’s discrimination claims. This exclusion does not form the basis for United National’s duty to defend; rather the previously mentioned insuring agreement forms the basis for coverage in this case and sets forth United National’s initial duty to the City.
Because at least some of Ms. Rider’s claimed discrimination damages, if proven, may be covered by the POP-EPL policy, modified exclusion “j.” merely clarifies that all claims in the suit will be defended against by the insurer. This interpretation is consistent with the well-settled principle that if the petition states any claim within the policy’s coverage, the insurer is obligated to defend the entire lawsuit, even the claims that fall outside the policy’s coverage. McKenzie & Johnson, 15 La. Civ. Law Treatise, Insurance Law & Practice, § 211, pp. 595-596 (3rd ed.2006).
Lastly, Endorsement PGU-POL-103 (11/00), which is entitled “BACK WAGES COVERAGE RESTRICTION” modifies the insurance contract by removing and replacing original exclusion “m.” with the following:
m. for back wages, future wages, overtime or similar claims, even if designated as liquidated damages, or claims or suits arising from collective bargaining agreements.
The stated purpose of this modification to exclusion “m.” is to exclude coverage for back wages. We would be remiss if we did not point out that if the POP-EPL policy was truly a “defense-only” policy, as argued by United National, then an endorsement excluding back wages would be unnecessary, as a sophisticated insurer would not issue an unnecessary endorsement regarding damages it claims to not cover. The modification of exclusion “m.” provides more ambiguity as to the scope of coverage afforded under the policy, thus bolstering our findings and conclusions regarding modified exclusion “d.” above, which may be interpreted as providing liability coverage for, at least, some damages.
|19In the context of that determination, we turn to whether the language in the modified exclusion clearly and unambiguously expresses the intent of the parties to exclude future loss of earning capacity from coverage. We find that it does not. The modified exclusion restricts coverage for “back wages, future wages, overtime or similar claims.” It does not clearly and unambiguously exclude coverage for loss of earning capacity. Louisiana law provides that “[l]oss of earning capacity is compensable, just as loss of actual earnings.” Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064, 1071 (La.App. 1st Cir.), units denied, 433 So.2d 1056, 1057 (La.1983), citing Folse v. Fak- *862 ouri, 371 So.2d 1120 (La.1979). In many instances, lost earning capacity and lost future earnings or wages are different elements of damages. Hunt v. Board of Supervisors of Louisiana State University Agricultural & Mechanical College, 522 So.2d 1144, 1151 (La.App. 2nd Cir.1988); see Logan v. Brink’s Inc., 2009-0001 (La.App. 4th Cir.7/1/09), 16 So.3d 530, 541, writ denied, 2009-1666 (La.10/30/09), 21 So.3d 290 (“loss of earnings and loss of earning capacity may form separate elements of damages”) and Corliss v. Elevating Boats, Inc. 599 So.2d 434, 437 (La.App. 4th Cir. 1992) (recognizing a distinction between future lost earnings and loss of earning capacity). Because Louisiana law distinguishes between actual lost wages, past or future, and loss of earning capacity, these are separate elements of recoverable damages. If United National intended to exclude coverage for future loss of earning capacity, it could have easily done so. Therefore, this endorsement cannot be interpreted so as to exclude coverage for Ms. Rider’s claim for loss of earning capacity.
In sum, we find that the provisions of United National’s POP-EPL policy are ambiguous and may be interpreted so as to afford coverage for Ms. Rider’s gender discrimination and disability discrimination claims, if proven. Thus, summary judgment was inappropriate. The trial court’s August 5, 2010 judgment granting | gnsummary judgment and dismissing Ms. Rider’s claims against United National is reversed, and this matter is remanded for further proceedings.
III. CONCLUSION
For all of the above and foregoing reasons, the August 5, 2010 judgment granting United National Insurance Company’s motion for summary judgment and dismissing all claims against it is reversed, and this matter is remanded for further proceedings. All costs of this appeal are assessed to the defendant/appellee, United National Insurance Company.
REVERSED AND REMANDED.
McCLENDON, J., concurs and assigns reasons.

. Previously, the City had filed a third-party demand against United National, but it subsequently dismissed its claims without prejudice. The dismissal of the third-party demand was based on a partial summary judgment in favor of United National and against the City in those proceedings entitled "United National Insurance Company versus City of St. Gabriel, Louisiana,” civil action no. 3:08-cv-575 on the docket of the United States District Court for the Middle District of Louisiana, which apparently resolved the same claims raised by the City in the third-party demand. However, Ms. Rider was not a party to those proceedings in the federal court, and therefore, the partial summary judgment in that case is neither conclusive nor binding on Ms. Rider’s claims in this suit. See La. R.S. 13:4231.

. United National’s motion for summary judgment was captioned as a motion for "partial” summary judgment; however, since the relief sought was a determination that no coverage existed for the plaintiff’s claims, it was, in essence seeking a dismissal of the plaintiff's claims, therefore, the motion was not a motion for "partial” summary judgment.

. The trial court specifically refused to hold a hearing on United National’s motion for summary judgment, despite United National's written request for a hearing on the matter and the opportunity to submit supporting proof. Instead, the trial court issued its ruling based solely on the "memoranda” submitted by the parties. This was a procedural defect in the summary judgment proceeding. Louisiana Code of Civil Procedure article 966(D) requires that the "court shall hear and render judgment on the motion for summaiy judgment within a reasonable time.” (Emphasis added.) Because the motion for summary judgment was never heard and the hearing on the motion was obviously not waived by the parties, the granting of the motion without a hearing was procedurally improper. However, despite this procedural defect, we find a reversal of the trial court’s judgment is warranted on other grounds, as detailed herein.

. Ms. Rider filed a motion to have the judgment certified and designated as a final judgment for purposes of immediate appeal under La. C.C.P. art. 1915(B). However, as the judgment dismissed United National from this suit, certification of the judgment as final under La. C.C.P. art. 1915(B) was unnecessary. See La. C.C.P. art. 1915(A)(1); La. C.C.P. art. 1911; Motorola, Inc. v. Associated Indemnity Corporation, 2002-0716 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 721.

. United National also claims that Ms. Rider’s claim for damages for "embarrassment” are clearly and unambiguously encompassed within the exclusion for damages arising from "humiliation.” Even if we were inclined to enforce the endorsement modifying exclusion "d.,” we disagree that the modified exclusion “d.” would be so clear and unambiguous on that point as to render summary judgment appropriate on that issue.