## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30604

United States Court of Appeals
Fifth Circuit

**FILED**
July 6, 2020

Lyle W. Cayce
Clerk

GEOVERA SPECIALTY INSURANCE COMPANY,

Plaintiff-Counter Defendant - Appellee

v.

EBERT JOACHIN; MARIETTE D. JOACHIN,

Defendants-Counter Claimants - Appellants

------------------------------------------------------------

Consolidated with 19-30672

GEOVERA SPECIALTY INSURANCE COMPANY,

Plaintiff - Appellee

v.

EBERT JOACHIN; MARIETTE D. JOACHIN,

Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana

Before DENNIS, ELROD, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

No. 19-30604

One fire led to two cases of buyers' remorse for Mariette and Ebert Joachin. The fire burned down a house they had bought just a month earlier. And when they filed an insurance claim, the insurer told them that their policy did not apply because they were not residing in the home. After learning that they may have purchased the wrong policy, the Joachins sued the agent who sold it to them. But in this case they seek to recover under the policy even though they did not meet the residency requirement. That the law does not allow.

I.

The Joachins purchased the home at a foreclosure sale for $55,500. The home was located at 5809 Bienvenue Avenue in Marrero, Louisiana. The Joachins intended to make it their primary residence.

After closing on the home, they decided to buy homeowners' insurance. So the Joachins went to a local insurance agency. An agent asked them a series of questions. She used the Joachins' answers to populate a self-made "quote sheet," which she entered into the company's system to select an insurer. The agent's quote sheet indicated that the Bienvenue home was a "new purchase" where the Joachins were not "currently living."

This was true. The Joachins had not moved in because they needed to do repairs first, like fixing termite damage and replacing some sheetrock. Yet the agent sold the Joachins a GeoVera Specialty homeowners' policy for people already residing in the property. But the Joachins had not moved in by the policy's inception date.

In fact, they never moved in because a fire destroyed the home a month later. The Joachins' policy covered fire damage, so they submitted a claim to GeoVera seeking the policy limit of $170,000. GeoVera invoked its right to investigate the claim. The Joachins responded that they had lived at a

No. 19-30604

different address since 2006, but intended to move into the Bienvenue home after they finished the repairs.

Largely because of this lack of residence, GeoVera denied the Joachins' claim. GeoVera then filed a complaint for a declaratory judgment in federal court. It sought a declaration that the Bienvenue home "d[id] not qualify as a 'residence premises'" and that it "owe[d] no duty to indemnify [the Joachins] for any loss arising out of" the fire under the policy. The Joachins counterclaimed that the policy did cover their home and sought contractual and bad faith damages.

GeoVera moved to dismiss the Joachins' counterclaims. It argued that the Joachins' nonresidence precluded coverage, which in turn precluded the bad faith claims. GeoVera also moved for summary judgment on its claim for declaratory relief.[1]

The district court granted GeoVera's motion to dismiss, agreeing that the policy provided coverage only to residents. The court also concluded that the Joachins could not prove coverage through vacancy exclusions, which provide grace periods "to prevent coverage from being suspended." Nor could they assert bad faith claims without establishing coverage. The court later granted GeoVera's motion for summary judgment for the same reasons. The Joachins appeal both rulings.

---

[1] GeoVera also sought to rescind the policy. It alleged that the Joachins lied in their application by indicating that they were occupying the Bienvenue house and that the house did not need repairs. After winning on the coverage question, GeoVera withdrew its motion for summary judgment on this issue.

No. 19-30604

II.

A.

Louisiana law tasks the Joachins with "prov[ing] coverage under the policy" before they may recover. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 357–59 (5th Cir. 2010). Their ability to do so boils down to one question: Was the Bienvenue home a covered "residence premises" under the insurance policy?

The Joachins' policy covered "[t]he dwelling on the 'residence premises' shown in the Declarations." It further defined "residence premises" as: "[t]he one-family dwelling where you reside . . . on the inception date of the policy period shown in the Declarations and which is shown as the 'residence premises' in the Declarations." The Joachins meet the second requirement because the Declarations page lists the Bienvenue house as the covered property.

But the "and" in the policy's definition of residence premises requires more than that—it also requires residence. *See Kennett v. USAA Gen. Indem. Co.*, -- F. App'x --, 2020 WL 1933950, at *3 (5th Cir. Apr. 21, 2020). That residence requirement is "clear and explicit." LA. CIV. CODE art. 2046. And the "plain, ordinary and generally prevailing meaning" of the word "reside" requires more than purchasing a home or intending to move into it. *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800, 805–06 (5th Cir. 2009) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). The Joachins recognize this, as they repeatedly admitted that they never "resided" at the Bienvenue property.

The Joachins' Bienvenue home thus did not satisfy the policy's "residence" requirement and was not a covered "residence premises." There is no coverage.

4

No. 19-30604

B.

The Joachins make two arguments in response. First, they contend that vacancy exclusions in the policy and in Louisiana statutes governing fire policies created coverage. To state this argument is to expose its faulty premise—that an exclusion can create coverage.

The policy's vacancy exclusion allows GeoVera to refuse payment for "[c]overed property losses" if the dwelling is vacant for more than 30 days. The statutory exclusion "suspend[s] or restrict[s] insurance" after more than 60 days of vacancy.[2]  *See* LA. R.S. § 22:1311. The vacancy exclusions do not convert uncovered properties into covered ones. *See Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 112 (5th Cir. 2008) (explaining that under Texas law an insured cannot use an exclusion to "create coverage that would not otherwise exist under a policy"). They instead give GeoVera an out if the Joachins increase the risk of property damage through sustained vacancy. *See* 6A STEVEN PLITT ET AL., COUCH ON INSURANCE § 94:102 (3d ed. 2020) ("The purpose of an occupancy clause is to avoid liability where the risk has been increased by vacancy.").[3]

The Joachins' view of the exclusions would flip the parties' burdens for insurance claims. Consistent with general insurance principles, Louisiana requires the insured to first prove coverage, after which the insurer can show that an exclusion applies. *Bayle*, 615 F.3d at 358–59; *see also Jones v. Estate of Santiago*, 870 So. 2d 1002, 1010 (La. 2004). That order is key: coverage must

---

[2] Because we find no coverage in the first place, we need not address whether this statutory exclusion for fire policies applies to the GeoVera homeowners' policy or how the statutory vacancy exclusion would interact with the one in the policy.

[3] Indeed, vacancy clauses are often considered "conditions subsequent" that "suspend the insurance," rather than "exclusions" that "declare that there never was insurance with respect to the excluded risk." *Id.* § 94:102 n.1; 6 *id.* § 81:19. Louisiana caselaw does not make that technical distinction. *E.g.*, *Doucette v. La. Citizens Coastal Plan*, 96 So. 3d 1236, 1239 (La. Ct. App. 5th Cir. 2012) (describing vacancy clause as "exclud[ing]" coverage).

No. 19-30604

exist before it can be excluded. *See Kennett*, 2020 WL 1933950, at \*1–2, 4 (considering a vacancy argument irrelevant when the plaintiff failed to establish that a property was his "residence premises"). The Joachins' primary case, *Thomas v. Industrial Fire & Casualty Co.*, 255 So. 2d 486 (La. Ct. App. 1st Cir. 1971), supports that principle. It involved an *insurer* invoking a vacancy exclusion to deny payment for otherwise covered property losses. *Id.* at 488. Vacancy exclusions do not help insureds like the Joachins.

Their second argument fares no better. The Joachins assert that the policy language requiring residence on the policy's inception date is "absurd" and thus unenforceable. *See Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124–25 (La. 2000) (noting that when "a literal reading of" a contract's term leads to absurd results, the court must "attempt to determine the [term's] true meaning and interpretation"), *reh'g granted on other grounds*, 782 So. 2d 573 (La. 2001); *cf.* LA. CIV. CODE art. 2046 (implying that "further interpretation" may be appropriate when a contract's terms "lead to . . . absurd consequences"). At first blush, this stringent requirement seems troubling. Residency requirements are nothing new in homeowners' policies. 5 JEFFREY E. THOMAS, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 53.02[1][a] (2020); *see Kennett*, 2020 WL 1933950, at \*1, 3–4 (affirming judgment in insurer's favor because insured did not reside in home at time of fire); *Korbel*, 308 F. App'x at 805–06 (rejecting claim for certain living expenses because insured did not reside in home). But we are aware of no reported case, nor could GeoVera identify one, involving a policy that requires residence on the inception date (as opposed to the day the covered event occurs). This reside-at-inception requirement means that if the insured moves in on Day 2 of the policy, there is no coverage for a fire occurring on Day 365.

Of course, that does not describe the Joachins' situation—they never resided at the home.     That means even the commonplace residency requirement would have barred coverage.

In any event, despite our concerns with the hypothetical posed above, the more restrictive inception-date requirement does not rise to the level of absurdity.     Absurdity requires a result "that no reasonable person could approve." *See Absurdity doctrine*, BLACK'S LAW DICTIONARY (11th ed. 2019). An insurance policy is thus absurd if it "exclude[s] all coverage" from the outset. *Rider v. Ambeau*, 100 So. 3d 849, 857 (La. Ct. App. 1st Cir. 2012) (concluding that a liability policy that excluded coverage "for the insured's liability" was absurd).     So is one that broadly excludes coverage without reasonable limitations. *Doerr*, 774 So. 2d at 124–25, 127 (characterizing a clause that was intended to exclude coverage for "environmental pollution" as absurd when it, by its "literal" terms, could extend to someone who slips on Drano or has a bad reaction to "chlorine in a public pool" (quotation omitted)). But the GeoVera policy is not absurd on its face.     The policy makes perfect sense for a homeowner who purchases it while already living in the home. Such an insured would receive robust coverage.

The problem, then, is not that GeoVera's policy is "absurd."     It is that the Joachins purchased the wrong policy.     Just as a policy requiring ownership would not become absurd if a renter mistakenly purchased it, the reside-at-inception policy is not absurd because insureds who had yet to move in purchased it.

Purchasing the wrong insurance policy is not unheard of, and the law provides a remedy when the fault lies with the agent who procured it. *See* 3 COUCH ON INSURANCE § 46:59 ("A party who has engaged a person to act as his or her agent in procuring adequate insurance is entitled to recover damages from the agent if the policy obtained does not cover a loss for which the agent

contracted to provide insurance, and the insurer refuses to cover the insured's loss . . . ."). That brings us back to where we started: The Joachins did sue their agent. And if the agent was liable, that was the place to look for blame in this case of the wrong policy.

The insurer is not liable for coverage it did not agree to provide.[4] And because it lawfully denied the claim, it is not on the hook for any bad faith claims. *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 525–26 (5th Cir. 2010) (citing *Clausen v. Fid. & Deposit Co. of Md.*, 660 So. 2d 83, 85 (La. Ct. App. 1st Cir. 1995)).

**\* \* \***

The judgment is AFFIRMED.

---

[4] Because GeoVera never agreed to insure the unoccupied, in-repair Bienvenue home, the policy may be subject to rescission. In fact, GeoVera sought rescission and conceded at oral argument that it was not entitled to retain the premiums for a policy that never went into effect. *See* 2 COUCH ON INSURANCE § 32:63; *see also Vest v. Richardson*, 253 So. 2d 97, 101 (La. Ct. App. 4th Cir. 1971).