# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-3531

_____

Bob Robison Commercial Flooring Inc

*Plaintiff - Appellant*

v.

RLI Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

_____

Submitted: September 24, 2024
Filed: March 19, 2025

_____

Before COLLOTON, Chief Judge, LOKEN and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

This insurance coverage dispute turns on the proper interpretation under Arkansas law of an exception to property insurance exclusions known as the ensuing loss clause, which restores coverage "when, as a result of an excluded peril, a covered peril arises and causes damage." Balfour Beatty Constr., LLC v. Liberty Mut. Fire Ins. Co., 968 F.3d 504, 511 (5th Cir. 2020). Ensuing loss provisions began in the wake of the 1906 San Francisco earthquake, when insurers added policy provisions

responding to California laws barring them from denying coverage for fire damage that followed the earthquake. See Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co., 611 F. Supp. 3d 41, 53-54 (D. Md. 2020). Despite this long pedigree, an ensuing loss clause's "effect remains clouded in confusion." Id. at 55 (citation omitted).

In this case, Nabholz Construction Company ("Nabholz") hired Bob Robison Commercial Flooring, Inc. ("BRCF") to install a vinyl gym floor with painted volleyball and basketball lines at a middle school in Trumann, Arkansas. BRCF installed the gym floor and subcontracted the painting portion of the project to Robert Liles Parking Lot Services ("Liles"). Liles's painting work was faulty; issues included crooked lines, incorrect markings, and smudges. Nabholz rejected the gym floor in December 2021. It is undisputed that the rejection resulted solely because of the subcontractor's misapplication of the paint. Because the defective painting could not be removed from the vinyl flooring, BRCF, to correct the project error, had to remove and replace the floor and paint new lines at a total cost of $181,415.39.

BRCF submitted a claim for its loss to RLI Insurance Company ("RLI"), seeking coverage for the total loss under the Installation Floater Coverage Part of the builder's risk policy RLI issued to BRCF for a policy period ending June 11, 2022 (the "Policy"). As relevant here, the Coverage Part provided:

> **PROPERTY COVERED**
> "We" cover only the following property and only to the extent the property is not otherwise excluded or subject to limitations.
> 1. **Coverage** - "We" cover direct physical loss or damage caused by a covered peril . . . at "your" "jobsite" and [while] "you" are installing, constructing, or rigging as part of an "installation project".
>
> **PERILS COVERED**
> "We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

**PERILS EXCLUDED**
2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

\* \* \* \* \*

d. "Defects, Errors, Or Omissions In Property" -- "We" do not pay for loss or damage caused by or resulting from inherent defects, errors, or omissions in covered property (whether negligent or not) relating to:
1) design or specifications;
2) workmanship or construction; or
3) repair, renovation, or remodeling.

But if a defect, error or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.  [The ensuing loss clause.[1]]

After investigation, RLI rejected BRCF's claim because "exclusion d. cited above excludes coverage for loss or damage caused by errors in covered property due to workmanship."

In June 2022, BRCF commenced this action in state court, seeking a declaratory judgment and breach-of-contract damages for the full loss.  The Verified Complaint alleged:  "As fully analyzed by the Texas court in Willbros Constr., while the RLI policy does not directly cover the subcontractor's negligent paint job, [the ensuing loss clause] does cover the irreparable damage caused to the vinyl gym floor as a result of the subcontractor's negligence," citing RLI Insurance Co. v. Willbros Construction (U.S.) LLC, No. CIV.A. H-10-4634, 2011 WL 4729866 (S.D. Tex. Oct. 5, 2011) (unpublished).  RLI removed the case to the Eastern District of Arkansas, invoking the court's diversity jurisdiction.

---

[1]Although this exception does not use the word 'ensuing,' it parallels the structure of ensuing loss clauses.  See Balfour Beatty, 968 F.3d at 511.

-3-

In March 2023, applying Arkansas law, the district court[2] denied RLI's motion to dismiss, concluding that BRCF stated plausible claims because "neither party has presented to the Court controlling case law that clearly disposes of the matters." In June 2023, after limited discovery, RLI moved for summary judgment, arguing that "the Policy language unambiguously excludes a loss caused by a defect in workmanship or construction . . . [and] it is undisputed that the only damage occurred as a result of the subcontractor's misapplication of the paint and not as a result of any ensuing peril or loss."

The district court granted RLI summary judgment, concluding the Policy unambiguously excludes coverage for damage and loss resulting from defective workmanship, and subcontractor Liles's negligent paint job was the sole reason the gym floor was damaged. BRCF appeals, arguing the district court erred in concluding the Policy is unambiguous and erred in granting summary judgment because the ensuing loss clause "unambiguously provides coverage for the replacement cost of the vinyl gym floor." On appeal, BRCF concedes that its contract damage claim is limited to the cost of removing and replacing the vinyl floor, $134,188.95. It does not seek to recover the cost of painting the new floor.

Neither party challenges the district court's conclusion that Arkansas law governs the interpretation of RLI's Policy. Like the district court, we have not found, and the parties have not cited, a binding Arkansas decision interpreting a similarly worded ensuing loss clause, let alone interpreting it under similar circumstances. "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." Hudson Specialty Ins. Co. v. Brash Tygr, LLC, 769 F.3d 586, 591 (8th Cir. 2014). In the absence of controlling Arkansas law, we make that prediction "by looking to other reliable indicators of state

---

[2]The Honorable Kristine G. Baker, now Chief Judge of the United States District Court for the Eastern District of Arkansas.

law, including the decisions of other state courts, decisions in analogous cases, and considered dicta." Hunter v. Page Cnty., 102 F.4th 853, 866 (8th Cir. 2024). Reviewing the district court's grant of summary judgment and its interpretation of state law and the Policy *de novo* and viewing the facts in the light most favorable to BRCF, the non-moving party, we affirm. See Grinnell Mut. Reins. Co. v. Schwieger, 685 F.3d 697, 700 (8th Cir. 2012) (standard of review).

## I. Discussion

In the district court, BRCF did not dispute that, absent the ensuing loss clause, Section 2.d. of the Policy excludes coverage for removing and replacing the gym floor because faulty "workmanship or construction," an excluded peril, resulted in direct physical loss or damage to this covered property. BRCF argued the ensuing loss clause restores coverage because the underlying damage to the floor is a covered peril that resulted from Liles's workmanship. RLI responded that the ensuing loss clause does not apply because Liles's defective painting did not cause or lead to a second, non-excluded peril, like a fire; the faulty painting "immediately and indistinguishably" damaged the gym floor. BRCF replied that the Policy does not require a second, non-excluded cause of loss; the damage to the gym floor was a covered peril resulting from defective workmanship.

Properly examining "persuasive Arkansas authorities" addressing similar, but not identical, issues and decisions applying the laws of other States in interpreting ensuing loss clauses, the district court first rejected BRCF's contention that the Policy is ambiguous. The court then concluded that, to trigger ensuing loss clause coverage, BRCF must identify a covered peril resulting from Liles's faulty workmanship. But apart from the faulty painting, "there was no other or separate damage or peril to the floor." Thus, "there is no genuine issue of material fact in dispute . . . the sole cause of the damage is an excluded peril under the language of the Policy."

**A. Is the RLI Policy Ambiguous?** BRCF first argues that the language defining "covered peril" in the Installation Floater Coverage Part is ambiguous because it renders the ensuing loss clause "nonsensical and its coverage illusory." The definition of covered peril conflicts with the ensuing loss clause, BRCF asserts. This ambiguity means the ensuing loss clause must be construed in favor of BRCF, the insured, under the principle that if an insurance policy is susceptible to two interpretations, the policy is construed "liberally in favor of the insured." See Norris v. State Farm Fire & Cas. Co., 16 S.W.3d 242, 246 (Ark. 2000). Like the district court, we disagree the Policy is ambiguous under Arkansas law.

Under Arkansas law, courts interpret insurance policies "like other contracts." Agric. Ins. Co. v. Ark. Power & Light Co., 361 S.W.2d 6, 12 (Ark. 1962). Unless the "meaning of the language depends upon disputed extrinsic evidence," the construction and legal effect of an insurance policy are questions of law decided by a court -- even when its "terms . . . are ambiguous." Smith v. Prudential Prop. & Cas. Ins. Co., 10 S.W.3d 846, 850-51 (Ark. 2000) (quotation omitted); accord Elam v. First Unum Life Ins. Co., 57 S.W.3d 165, 169 (Ark. 2001).[3] When the facts are undisputed and the parties do not offer extrinsic evidence supporting their differing interpretations of the policy, as is the case here, "it is the trial court's *duty*" to determine and give effect to the meaning of the contract's language. Elam, 57 S.W.3d at 170 (emphasis added). It is well established that "[d]ifferent clauses of a contract must be read together and the contract construed so that all of its parts harmonize" -- "[a] construction which neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions." Cont'l Cas. Co. v. Davidson, 463 S.W.2d 652, 655 (Ark. 1971).

---

[3]On the other hand, if parol evidence has been admitted, "the meaning of an ambiguity may become a question for the fact-finder." Smith, 10 S.W.3d at 850.

Here, the district court noted that the Supreme Court of Arkansas interpreted a similar all-risks policy in United States Fidelity & Guaranty Co. v. Loarn Forbess Construction Co., 262 Ark. N-316 (1978) (unpublished) (U.S.F. & G.). The policy excluded coverage for loss "by theft of any property" but its ensuing loss provision restored coverage if "loss from a peril not excluded in this policy ensues from theft or attempted theft." Reversing the trial court, the Supreme Court of Arkansas concluded there was "no ambiguity" in the policy. Id. at N-318. Given this holding and the policy similarities, the district court predicted that the Supreme Court of Arkansas would determine "that there is no ambiguity in the exclusionary language of the [RLI] Policy." We agree.

The relevant Policy provisions are not conflicting. The covered perils section provides coverage for direct physical loss, unless an excluded peril causes that loss. The ensuing loss clause restores coverage if an excluded peril results in a loss caused by a *covered peril*. The district court concluded there is no coverage in this case because the sole cause of the damage was an excluded peril. This does not render the ensuing loss clause coverage illusory -- it still applies to a second loss caused by a covered peril that the excluded peril may have set in motion, like the San Francisco fires that resulted from the 1906 earthquake. By contrast, BRCF's interpretation of the ensuing loss clause would require the insurer to cover losses caused directly and exclusively by the excluded peril, nullifying the faulty workmanship exclusion. "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." Castaneda v. Progressive Classic Ins. Co.,166 S.W.3d 556, 561 (Ark. 2004).

**B. The Covered Peril Issue.** Alternatively, BRCF argues the Policy's ensuing loss provision unambiguously provides coverage for the replacement cost of the vinyl gym floor. BRCF relies on cases from other jurisdictions that denied an insurer's motion for summary judgment, applying a "broad view" that ensuing loss clauses "do

not require the covered event to be independent from the excluded peril, but only the direct cause of the loss." Bethany, 611 F. Supp. 3d at 57; see Leep v. Trinity Universal Ins. Co., 261 F. Supp. 3d 1071, 1083-85 (D. Mont. 2017) (defective replacement of roof led to water leak; ensuing loss provision restored coverage for loss caused by water damage, a covered peril); Bartram, LLC v. Landmark Am. Ins. Co., 864 F. Supp. 2d 1229, 1235 (N.D. Fla. 2012) ("[E]nsuing losses, if they resulted from a covered cause, are covered . . . regardless of whether the loss was naturally set in motion by an excluded cause of loss."); Willbros Construction, 2011 WL 4729866 at *3, citing Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co., 219 F.3d 501, 505-06 (5th Cir. 2000) ("[E]nsuing loss provisions . . . preserve coverage for damage different in kind from the defective workmanship that caused it.").

The district court found more persuasive the Fifth Circuit's interpretation of ensuing loss clauses in Balfour Beatty, 968 F.3d at 507-08. In that case, a contractor hired Balfour to work on a building. A subcontractor did welding work on the project. Welding slag fell down the side of the building and damaged exterior windows on lower floors. Balfour's insurer denied coverage based on the policy exclusion for window damage from construction, design, or workmanship. Balfour argued the policy's ensuing loss clause restored coverage. The Fifth Circuit disagreed. An ensuing loss clause "is only triggered when one (excluded) peril results in a distinct (covered) peril, meaning there must be two separate events for the Exception to trigger." Here, "there was only one cause for the loss in this case -- Appellants' welding operation." Id. at 513-14.

Other federal circuit court decisions support the Fifth Circuit's interpretation of ensuing loss clauses in Balfour Beatty. See Rocky Mtn. Prestress, LLC v. Liberty Mut. Fire Ins. Co., 960 F.3d 1255, 1262 (10th Cir. 2020) ("[T]he [ensuing loss] exception only restores coverage for damage sustained when the defective workmanship becomes the cause of additional, separate damage."); Friedberg v. Chubb & Son, Inc., 691 F.3d 948, 953-54 (8th Cir. 2012), quoting Aetna Cas. & Sur.

-8-

Co. v. Yates, 344 F.2d 939, 941 (5th Cir. 1965) (Friendly, J., sitting by designation) ("The better view of Minnesota law . . . is that the ensuing-loss provision excludes from coverage the normal results of defective construction, and applies only to distinct, separable, ensuing losses. . . . [The] broad view of the ensuing loss clause would . . . 'nearly destroy' the [applicable] exclusion."); Alton Ochsner Med. Found., 219 F.3d at 506 ("To fall back within coverage as 'resulting physical damage,' the policy contemplates damage that is different in kind, not merely different in degree."); see also Torabi v. State Farm Fire & Cas. Co., 514 F. Supp. 3d 1064, 1069 (W.D. Ark. 2021) ("[T]he ensuing loss clause does not apply [under Arkansas Law] if the ensuing loss 'is itself a loss not insured.'") (cleaned up).

The district court's grant of summary judgment was guided by these decisions, by the Supreme Court of Arkansas decision finding no policy ambiguity in U.S.F. & G., and by that Court's conclusion there was no coverage in a case posing "the opposite question" -- where a covered cause of loss led to an excluded, ensuing type of loss. Ratliff Ent., Inc. v. Am. Employers Ins. Co., 975 S.W.2d 837, 840-41 (Ark. 1998). Based on the undisputed facts, the court concluded that BRCF identified no "covered peril" that triggered coverage under the Policy's ensuing loss provision. "Other than Liles' improper application of the painting," the court explained, "there was no other or separate damage or peril to the floor."

BRCF contends that the Supreme Court of Arkansas would likely adopt the "broad view" in interpreting ensuing loss clauses and that the ensuing loss clause covers the damage requiring replacement of the vinyl gym floor in this case under either approach. BRCF fails to respond to the district court's analysis. It does not identify a "covered peril," as the ensuing loss clause requires, to restore coverage excluded by the faulty workmanship exclusion. All BRCF argues is that the cost of repainting the gym floor and the cost of replacing the floor are separate "perils." But they are not separate "perils." They are different types of damage to the covered property. If both types of damage occur at the same time and are solely caused by an

excluded peril such as faulty workmanship, the ensuing loss clause does not "restore" all or any part of the excluded coverage. To paraphrase the Fifth Circuit, if Liles's faulty workmanship was the sole cause of damage to the gym floor, the faulty painting did not result in a covered peril; the painting "was *itself* the peril." Balfour Beatty, 968 F.3d at 513 (emphasis in original).

The earlier decision of the Southern District of Texas in Willbros Construction, on which BRCF heavily relies, is distinguishable factually. More important, for the legal analysis we will follow -- and predict the Supreme Court of Arkansas would follow given its prior decisions in U.S.F. & G. and Ratliff -- the ruling of a Fifth Circuit panel reviewing a final order, rather than a prior, inconsistent, *non-final* order of a district court in that Circuit. BRCF also heavily relies on earlier decisions of the Supreme Court of Washington, a broad view jurisdiction. But that Court recently clarified "that a resulting loss exception requires separate ensuing loss -- damage beyond the faultily constructed or defectively designed element -- caused by a new and distinct covered peril." Gardens Condo. v. Farmers Ins. Exch., 544 P.3d 499, 504 (Wash. 2024).[4]

---

[4]A recent panel decision of the District of Columbia Circuit carefully considered the divided decisions across the country on this issue and concluded, applying District of Columbia law, that the ensuing loss clause at issue restores coverage "whenever an insured peril is a direct cause of the loss, even if the insured peril was itself caused by an excluded peril." 3534 E. Cap Venture, LLC v. Westchester Fire Ins. Co., 104 F.4th 913, 917 (D.C. Cir. 2024). But the case involved subsequent water damage to buildings under construction caused by excluded conditions. The water damage was clearly a separate covered peril, so the court did not address this covered peril issue. Compare SOME, Inc. v. Hanover Ins. Co., No. CV 21-00493, 2023 WL 1861066, at *10 (D.D.C. Feb. 9, 2023) (denying ensuing loss clause coverage because "the damage to the Conway Center is entirely attributable to the design defect, with no segregable covered cause of loss identified.").

-10-

Interpreting the ensuing loss clause to require a separate covered peril to restore excluded coverage comports with the plain language of the Policy. A covered peril is defined as direct physical loss or damage not caused by an excluded event. The ensuing loss clause restores coverage if an excluded peril results in loss that is caused by a covered peril. By contrast, if all the loss is caused by the excluded peril, applying the ensuing loss clause to restore some but not all of the loss, as BRCF urges, would require RLI to pay for loss solely attributable to faulty construction, an excluded peril. This interpretation "nullifies the portion of the policy language" that excludes coverage for loss or damage caused by or resulting from construction or workmanship, Section 2.d. Smith v. S. Farm Bureau Cas. Ins. Co., 114 S.W.3d 205, 208 (Ark. 2003). We therefore read the ensuing loss provision in this Policy as requiring that a separate non-excluded peril cause a restored loss.

Applying these principles, we conclude the district court did not err in concluding that Section 2.d. of the Coverage Part excludes coverage for the entire loss and damage to the gym floor resulting from Liles's defective painting. The ensuing loss clause does not restore coverage because BRCF failed to identify a separate "covered peril." Rather, it is undisputed that faulty workmanship was the sole and exclusive cause of loss which occurred the moment the paint was applied.

For the foregoing reasons, the judgment of the district court is affirmed.

_____