# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1824
_____

Roland Pour, Sr.; Kmontee Pour; Roland Pour, Jr.

*Plaintiffs - Appellants*

v.

Liberty Mutual Personal Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 11, 2025
Filed: December 1, 2025
_____

Before LOKEN, BENTON, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.

In 2010, Roland Pour Sr. ("Pour Sr.") purchased a home located at 11637 Nevada Lane in Champlin, Minnesota (the Champlin home), where he would live with his wife and two children, Kmontee Pour ("Kmontee") and Roland Pour Jr. ("Roland"). In 2015, Pour Sr. purchased a 12 month multi-coverage LibertyGuard Deluxe Homeowners Insurance Policy (the "Policy") from Liberty Mutual Personal

Insurance Company ("Liberty Mutual"). The Policy was renewed on the same terms for the policy period beginning May 15, 2021 to May 15, 2022. On September 5, 2021, a fire damaged the Champlin home, attached garage, and the Pours' personal property. Pour Sr., living in Georgia at the time of the fire, reported the loss to Liberty Mutual, advising he was not in Minnesota and providing Kmontee's contact information. Pour Sr. sought payment from Liberty Mutual for (i) the damage to the Champlin home and attached garage, (ii) personal property damages and alternate living expenses incurred by Kmontee, Roland, and Kmontee's children, and (iii) Pour Sr.'s personal property stored in the home. Liberty Mutual denied coverage for the damage to the Champlin home because Pour Sr. did not "reside" at the house and denied coverage for Kmontee and Roland's personal property and expenses because they were not "residents of Pour Sr.'s household."

In June 2022, the Pours filed this diversity action for damages, alleging Liberty Mutual wrongfully denied coverage for damage to the Champlin home and garage, to Kmontee and Roland's personal property, and to Pour Sr.'s personal property in the home. After the parties submitted affidavits and memoranda, and a lengthy hearing on their cross motions for summary judgment, the district court,[1] applying Minnesota law, granted Liberty Mutual summary judgment, concluding the Policy (i) did not cover the Champlin home because Pour Sr. did not "reside" there at the time of the fire, and (ii) did not cover Kmontee and Roland's personal property because, though they were living there, they were not "residents of Pour Sr.'s household." Order, Roland Pour Sr. v. Liberty Mut. Personal Ins. Co., No. 22-CV-1502, 2024 WL 1242283 (D. Minn. Mar. 22, 2024). The Pours appeal those rulings.[2] "Reviewing the

---

[1]The Honorable Patrick J. Schiltz, Chief Judge of the United States District Court for the District of Minnesota.

[2]The statement of issues presented also includes the dismissal of Pour Sr.'s personal property claim. Liberty Mutual responded that it did not deny that claim, and the parties represented at oral argument that it has been settled.

district court's grant of summary judgment and its interpretation of state law and the Policy *de novo* and viewing the facts in the light most favorable to [the Pours], the non-moving parties, we affirm. See Bob Robison Com. Flooring Inc. v. RLI Ins. Co., 131 F.4th 832, 836 (8th Cir. 2025) (standard of review).

## I. Background

Pour Sr. resided at the Champlin home, the only home he owned, until 2019 when he moved to Bethlehem, Georgia to live with his second wife in the home she owned. After moving to Georgia, he changed his mailing and credit card addresses, driver's license, voter registration, and financial accounts to the Georgia residence. But he did not sell the Champlin home or tell Liberty Mutual he was changing his primary residence. He allowed Kmontee, Roland, and his grandchildren to continue living there.[3] Pour Sr. paid the Champlin home mortgage payments and property taxes and stored belongings in the garage and under a staircase in the home. Kmontee paid for primary utilities.

Relevant to the issue of "residing," Pour Sr. visited Minnesota "a couple times a year" from 2019 to 2021, the trips lasting two days to two weeks. Prior to the day of the fire in September 2021, Pour Sr. came to Minnesota in June 2019, October 2019, June 2020, and a two-week visit in May 2021 for his new granddaughter's christening and a family reunion. He declared under oath that, when in Minnesota, he would visit the Champlin home "almost every day," would often spend the night there, and would otherwise stay with his cousin in nearby Anoka, as he did during the May 2021 visit.

---

[3]At the time of the fire, it appears that Kmontee, Roland, at least two of Kmontee's minor children, and Pour Sr.'s ex-wife, stepson, and friend lived in the Champlin home. Liberty Mutual's fire investigator opined that the fire may have started in the backyard from Kmontee's improperly discarded cigarettes.

After the fire, Pour Sr. filed a claim under the Policy seeking coverage for property damage to the Champlin home and attached garage, personal property of Kmontee, Roland, and Kmontee's children's, and Pour Sr.'s personal property. The Policy contains the following relevant provisions (emphasis added):

**DEFINITIONS**
In this policy, "you" and "your" refer to the "named insured" shown in the Declarations [Pour Sr.] and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

\* \* \*

3. *"Insured" means* you and *residents of your household* who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above. . . .
4. *"Insured location" means:*
   a. The *"residence premises"*;
   b. The part of other premises, other structures and grounds used by you as a residence and:
      *(1) Which is shown in the Declarations*; or
      (2) Which is acquired by you during the policy period for your use as a residence . . . .
8. *"Residence premises" means*:
   a. *The one family dwelling, other structures, and grounds*; or
   b. That part of any other building;
   *where you reside and which is shown as the "residence premises" in the Declarations.*

**SECTION I - PROPERTY COVERAGES**
**COVERAGE A - Dwelling**
We cover:
1. *The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling*; and
2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises". . . .

**COVERAGE B - Other Structures**
We cover other structures on the "residence premises" set apart from the dwelling by clear space. . . .

**COVERAGE C - Personal Property**
*We cover personal property owned or used by an "insured"* while it is anywhere in the world.

On September 15, 2021, Liberty Mutual sent Pour Sr. a letter denying his claim for "dwelling, other structure, and additional living expense coverage." The letter noted that property damage to the Champlin home or garage is not covered because the "policy provides coverage for the residence premises where you reside," and Pour Sr. had "not lived at the loss location . . . for the last three years, as this is when [he] permanently relocated to Georgia." Damage to Kmontee and Roland's personal property and additional living expenses are not covered because they were not "insureds under the policy." After further exchanges, this diversity action followed.

In their Amended Complaint, the Pours claim the Policy covers property damage to the Champlin home and garage because "the Champlin residence is [Pour Sr.'s] residence premises." Property damage to Kmontee[4] and Roland's personal property is covered because they are "insureds." Following discovery, the parties cross-moved for summary judgment on these issues. The district court granted summary judgment in favor of Liberty Mutual. Applying Minnesota law, the district court concluded that the Policy did not cover the damage to the Champlin home or garage because the Policy unambiguously required Pour Sr. to reside at the Champlin house at the time of the fire:

---

[4]All references to Kmontee's claim for personal property coverage also include the claims of his three minor children. If Kmontee is considered an "insured," then his children likely are as well.

Liberty Mutual concedes that a person can reside in more than one place, and also concedes that its policy covers a residence of the insured, even if the insured has more than one residence. Liberty Mutual argues, however, that the Champlin home was not a residence of Pour [Sr.] . . . because, after [he] moved to Georgia to live with his new wife, he barely set foot in the Champlin home.

\* \* \* \* \*

In the policy, the language and formatting of the clause defining "residence premises" make clear that the phrase "where you reside" modifies *both* "[t]he one family dwelling, other structures, and grounds" *and* "[t]hat part of any other building."

\* \* \* \* \*

Minnesota cases do not squarely address the question of when a named insured "resides" in a particular dwelling, but cases addressing whether a named insured's *relatives* are "residents of the household" are instructive. Minnesota courts formally use a "three-factor" test . . . .

\* \* \* \* \*

Most of these factors undermine Pour's contention that he resided in the Champlin home. . . . Ultimately, although "a scintilla of evidence" supports the contention that Pour resided at the Champlin house . . . no reasonable jury could find that Pour resided at the Champlin house either at the time of the fire or at the start of the Policy period.

Order at \*3-6, 2024 WL 1242283. The court emphasized that nothing in the Policy requires "the named insured to continuously occupy the premises. That is not what Liberty Mutual argues, and . . . not what this Court has held." Therefore, the residency requirement does not conflict with the Minnesota Standard Fire Insurance Policy, Minn. Stat. § 65A.01, as the Pours argued to the district court and on appeal.

-6-

The district court also concluded that the Policy does not cover damage to Kmontee and Roland's personal property. Though living in the Champlin home at the time of the fire, they were entitled to personal property coverage only if they were "insureds," which the Policy defines as "residents of . . . [Pour Sr.'s] household." Because Pour Sr. and his sons did not "'dwell together as a family under the same roof,' they were not residents of the same 'household.'" Id. at *6, citing Firemen's Ins. Co. of Newark v. Viktora, 318 N.W.2d 704, 707 (Minn. 1982).

## II. Discussion

**A. Did Pour Sr. "reside" in the Champlin home?** The Property Coverages Section of the Policy provides that it covers property damage to "[t]he dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling." The Policy Definitions, which govern "this policy," define "residence premises" as including "[t]he one family dwelling, other structures, and grounds . . . *where you reside* and which is shown as the 'residence premises' in the Declarations." The Definitions define "Insured location" as meaning "[t]he 'residence premises' [and] the part of other premises . . . used by you as a residence and . . . which is shown in the Declarations." The Insurance Information section of the Policy Declarations does not list a "residence premises" but states that the "Insured Location" is the mailing address of the Champlin home. The Pours conceded that these provisions are unambiguous. Thus, the district court noted that "[t]he coverage dispute in this case turns on . . . whether Pour 'reside[d]' in the Champlin home at the time of the fire." Order at *2, 2024 WL 1242283.

Rather than question Liberty Mutual's contention that the Champlin home is listed as the residence premises in the Policy Declarations because the terms "residence premises" and "insured location" are synonymous, which the district court obviously credited, the Pours argued that "where you reside" is a description of the property being insured when the Policy was issued, not a continuing condition of

-7-

coverage at the time of the fire. The district court concluded the distinction is irrelevant because whether Pour Sr. resided at the Champlin home did not change between the day the Policy was issued, May 15, 2021, and the day of the fire, September 5, 2021. On appeal, the parties continue to debate whether the phrase "where you reside" is a description of the property being insured when the Policy was issued, or a continuing condition of coverage at the time of the fire. The Pours cite Minnesota cases where the distinction was important, mostly from the nineteenth and early twentieth centuries. We agree with the district court that it is irrelevant *on the facts of this case* and therefore decline to consider it further.

Both parties agree that Minnesota law governs the interpretation and application of Policy terms. On the issue the district court did decide, we have not found, and neither the parties nor the district court cited, a binding Minnesota decision applying the phrase "where you reside" to similar factual circumstances. As the Supreme Court of Minnesota has not decided the issue, "it is up to this court to predict how the state's highest court would resolve that issue. . . . In the absence of controlling [Minnesota] law, we make that prediction by looking to other reliable indicators of state law, including the decisions of other state courts, decisions in analogous cases, and considered dicta." Bob Robison, 131 F.4th at 835-36 (quotations omitted).

General principles of insurance policy interpretation are well settled under Minnesota law. "The interpretation of an insurance policy and the application of the policy to the undisputed facts of a case are questions of law" for the court. Com. Bank v. W. Bend Mut. Ins. Co., 870 N.W.2d 770, 773 (Minn. 2015). Whether a policy term is ambiguous is also an issue of law for the court. Blattner v. Forster, 322 N.W.2d 319, 321 (Minn. 1982). If the policy's language is unambiguous, "we will not render a construction which is more favorable to finding coverage but will apply the phrase to the facts of the case in order to give effect to the plain meaning of the language." Viktora, 318 N.W.2d at 706.

The Pours did not contend that the phrase "where you reside" is ambiguous, and rightly so. "The Minnesota Supreme Court has repeatedly held that the term 'resident' in an insurance contract is not ambiguous." Progressive Direct Ins. Co. v. Rithmiller, 505 F. Supp. 3d 899, 904 (D. Minn. 2020), citing Lott v. State Farm Fire & Cas. Co., 541 N.W.2d 304, 306-07 (Minn. 1995); accord Heniser v. Frankenmuth Mut. Ins. Co., 534 N.W.2d 502, 505-10 (Mich.1995) (concluding the phrases "residence premises" and "where you reside" are unambiguous, citing cases from other jurisdictions). While residency is a fact question, a court may determine residency as a matter of law when, as in this case, the material facts are undisputed. See Am. Fam. Mut. Ins. Co. v. Thiem, 503 N.W.2d 789, 790 (Minn. 1993); Rithmiller, 505 F. Supp. 3d at 904 n.5, and cases cited.

Though not ambiguous, the term "reside" is not defined in the Policy. "Unambiguous and undefined terms in a policy must be given their plain, ordinary, or popular meaning." Gopher Oil Co. v. Am. Hardware Mut. Ins. Co., 588 N.W.2d 756, 762 (Minn. App. 1999), citing Jenoff, Inc. v. N.H. Ins. Co., 558 N.W.2d 260, 262 (Minn.1997). Minnesota courts often look to dictionary definitions to ascertain the plain meaning of an undefined term. See Aetna Ins. Co. v. Getchell Steel Treating Co., 395 F.2d 12, 16 n.4 (8th Cir. 1968); Mattson Ridge, LLC v. Clear Rock Title, LLP, 824 N.W.2d 622, 632 (Minn. 2012); Great Nw. Ins. Co. v. Campbell, 3 N.W.3d 59, 64-65 (Minn. App. 2024).

Dictionaries define "Reside" as "to dwell permanently or for a considerable time," The Random House Dictionary of the English Language (2nd ed. 1987); or "to dwell permanently or for a length of time; to have a settled abode for a time; to abide; to live," Webster's New Universal Unabridged Dictionary (2nd ed. 1983). Black's Law Dictionary (9th ed. 2009) defines "residence" as "the act or fact of living in a given place for some time . . . [or] bodily presence as an inhabitant in a given place." In GeoVera Specialty Ins. Co. v. Joachin, the Fifth Circuit held that the "plain, ordinary and generally prevailing meaning of the word 'reside' requires more than

purchasing a home or intending to move into it." 964 F.3d 390, 393 (5th Cir. 2020) (quotation omitted).

We agree with the district court that applying the plain meaning of the phrase "where you reside" to the facts of this case is quite simple. After he moved to Georgia well before the start of the Policy period, Pour Sr. did not live at the Champlin home for *any* amount of time. During the Policy period, he *visited* Minnesota once and did not stay at the Champlin home during that visit. In the two years preceding the fire, he visited Minnesota three or four times, never staying more than two weeks, making frequent visits to the Champlin home to see his family members living there, but often sleeping at the nearby home of a cousin. The Policy required residence at the Champlin home for a "length of time." The facts indicate that Pour Sr. did not reside at the home for a "length of time."

While Minnesota cases have not interpreted and applied the phrase "where you reside," they have addressed whether someone is a "resident" of a named insured's household. See, e.g., Viktora, 318 N.W.2d at 706-07. In determining whether an individual is a "resident" of the named insured's household, Minnesota courts consider a number of factors including whether the person claiming residence "was self-supporting, had plans to leave, received mail, paid rent . . . [the] age, establishment of separate residence, self-sufficiency, frequency and duration of stay, intent to return . . . [and whether] the individual had a designated room, kept personal belongings at the home, owned a key, did chores, ate meals with residents, and had a close relationship with residents." Rithmiller, 505 F. Supp. 3d at 905 (cleaned up), citing Minnesota cases. We agree these cases are instructive, and that, applying these factors, "the evidence as a whole establishes" that Pour Sr. did not reside at the Champlin home at the start of the policy period or at the time of the fire.

Decisions from other jurisdictions support this conclusion. See Gerow v. State Auto Prop. & Cas. Co., 346 F. Supp. 3d 769, 780 (W.D. Pa. 2018) (applying Pennsylvania law and concluding that an individual who visited the insured home two to four times a month did not reside there, as "[s]poradic visits, only some of which involve spending time at the Subject Property, are simply not enough to create a genuine issue of material fact regarding residency"); Shepard v. Keystone Ins. Co., 743 F. Supp. 429, 430-31 (D. Md. 1990) (applying Maryland law and explaining that "the terms 'residence' and 'reside,' as employed throughout the policy, clearly refer to a place that is occupied by the insured as a dwelling place or home, at least on a temporary basis"); Ctr. Ins. Co. v. Blake, 370 F. Supp. 2d 951, 957 (D.N.D. 2005) (applying North Dakota law and holding that an insured who voluntarily moved out of the insured home and rented it to others did not "reside" there, even though he stored personal items in the home and made repairs to the property).

The Pours are correct that, under Minnesota law, a person may have more than one residence for insurance purposes. Thiem, 503 N.W.2d at 789. But Liberty Mutual conceded that an insured can own, insure, and reside in multiple homes. More importantly, as the district court explicitly ruled, under applicable Minnesota law -- including the multi-factor test to determine whether an individual is a resident of a household and the plain and ordinary meaning of the term "reside" -- insureds may have more than one residence. We therefore reject the Pours' contention that "snowbirds," such as Minnesotans who own residences in Minnesota and in warmer states, could "not insure either home under Liberty Mutual's interpretation because they do not continuously reside in either location." The proper analysis for a particular snowbird under Minnesota law, a recurring issue, is fact specific.

Like the district court, we also reject the Pours' contention that the Policy violates Minnesota's Standard Fire Insurance Policy ("Standard Policy"), Minn. Stat. § 65A.01. The Standard Policy "requires that certain terms and conditions be

included in fire insurance policies in Minnesota." Else v. Auto-Owners Ins. Co., 980 N.W.2d 319, 324 (Minn. 2022) (quotation omitted). If a provision in an insurance policy is "in direct conflict with a statute regulating the insurance industry, the statute's conformity clause operates to substitute the statutory provisions for the policy provision." Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 690 (Minn. 1997). But "[i]nsurers may include additional or different terms in a fire insurance policy as long as those terms offer more coverage than the statutory minimum." Else, 980 N.W.2d at 324 (quotations omitted).

The Pours contend that the provision limiting coverage to "where Pour Sr. resides" conflicts with § 65A.01, subd. 3., because it requires Pour Sr. to continuously live at the Champlin home; Liberty Mutual's interpretation, they argue, would preclude coverage if, for example, Pour Sr. left the home unoccupied for less than 60 consecutive days. We disagree. The Standard Policy allows insurers to limit coverage if the residence premises is unoccupied for more than 60 consecutive days, meaning a policy may not limit coverage if the residence premises is unoccupied for 59 or fewer consecutive days. But nothing in the Standard Policy directly restricts insurers from limiting coverage based on how the residence premises is *used*. Cf. Keelen v. Metro. Prop. & Cas. Ins. Co., No. 11-1596, 2012 WL 1933747, at *6 (E.D. La. May 29, 2012). Indeed, the Standard Policy allows an insurer to make coverage contingent on the property being used as a residence. See § 65A.01, subd. 3a(1) (emphasis added) ("When this policy *has been issued to cover buildings used for residential purposes* other than a hotel or motel and has been in effect for at least 60 days . . . this policy shall not be canceled, except for one or more of the following reasons . . .").[5] The district court held that "[b]ecause the Policy does not require

_____

[5]In Oliver v. State Farm Fire & Cas. Ins. Co., the Supreme Court of Minnesota noted that "a homeowner's insurance policy issued by State Farm . . . adhered to the Minnesota Standard Fire Insurance Policy." 939 N.W.2d 749, 750-51 (Minn. 2020).

-12-

continuous occupancy, the Policy does not conflict with the occupancy language in the Standard Policy." Order at *6, 2024 WL 1242283. We agree.

The Pours further argue for the first time on appeal that the "policy definition for 'residence premises' provides illusory coverage" because nothing is identified as the residence premises in the Declarations, which identify the Champlin home as the "insured location." Thus, "[a]s written, the definition of 'residence premises' provides no coverage for the Champlin home no matter who resides there or how long they reside there because the Champlin home is not listed as the 'residence premises' on the Declarations page." This illusory coverage theory was not argued to the district court and is therefore forfeited. See, e.g., Heuton v. Ford Motor Co., 930 F.3d 1015, 1022 (8th Cir. 2019). It is also without merit. As Liberty Mutual explained in the district court and on appeal, "Insured location" is defined in the Policy as "the residence premises." Thus, in this context, the terms are synonymous and interchangeable, and the coverage the Policy provides, though limited by these terms, is not illusory.

In sum, the "where you reside" provision is not ambiguous, does not provide illusory coverage, and does not conflict with the Standard Policy. Like the district court, we predict the Supreme Court of Minnesota would conclude, based on the undisputed facts in this summary judgment record, that Pour Sr. did not reside in the Champlin home at the time of the fire and is not entitled to coverage for the property damage to the Champlin home, its attached garage, and "other structures on the 'residence premises'" as defined in Property Coverage B.

**B. Were Roland and Kmontee Covered Insureds at the time of the fire?**
The Policy covers "personal property owned or used by an 'insured' while it is anywhere in the world." Insured is defined to include "residents of [the named insured's] household who are: a. Your relatives." Kmontee and Roland are therefore

entitled to coverage for damage to their personal property if they were residents of Pour Sr.'s household at the time of the fire. The district court concluded they are not entitled to coverage for their personal property, citing established Minnesota law:

> As the Court has held, Pour [Sr.] did not reside at the Champlin house, but it is undisputed that Kmontee and Roland *did*. Because Pour and his sons did not "dwell together as a family under the same roof," they were not residents of the same "household." See Viktora, 318 N.W.2d at 707.

Order at *6, 2024 WL 1242283. On appeal, without addressing the Viktora line of cases except to note a comment by the Supreme Court of Minnesota in an unrelated case that "the test is not rigid," the Pours argue that the personal property claims of Kmontee and Roland are covered because they "had an informal family relationship [that] Roland Pour, Sr. would visit his family and stay at his home." Like the district court, we reject this contention.

Under Minnesota law, the phrase "resident of the Named Insured's household" is unambiguous. See Viktora, 318 N.W.2d at 706. In applying that policy term, The Supreme Court of Minnesota and the Minnesota Court of Appeals have repeatedly looked to three factors to determine whether an individual is a resident of the named insured's household: was the person "(1) [l]iving under the same roof [as the named insured]; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon." Id. at 706 (cleaned up).

The Supreme Court "has generally encompassed the first two . . . factors by defining 'household' in its common and ordinary meaning for insurance purposes as generally synonymous with 'family' and as including those who dwell together as a

family under the same roof." Id. at 707 (quotation omitted). The third factor "presumes that the insured and proposed insured are living together under the same roof." Cates ex rel. Winter v. N. Star Mut. Ins. Co., No. A08-0690, 2009 WL 305510, at *4 (Minn. App. Feb. 10, 2009). "In this context, 'household' refers to a social unit which is something more than a group of individuals who occasionally spend time together in the same place." Lott, 541 N.W.2d at 307.

Applying the first two factors to this case is, as the district court recognized, a straightforward task. Pour Sr., Kmontee, and Roland did not "dwell together as a family under the same roof" after Pour moved to Georgia. Though they had a close relationship, they were not "*living* in that close relationship at the time of the [fire]." Frey v. United Servs. Auto. Ass'n, 743 N.W.2d 337, 345 (Minn. App. 2008) (emphasis in original); accord Lott, 541 N.W.2d at 308. Pour Sr. rarely visited his sons in Minnesota, did not have a room in the Champlin home, and had no intention of returning to the Champlin home. On this record, Pour Sr. and his sons are at most family members who see each other a couple times a year. See Cates, 2009 WL 305510, at *1, 4:

> After Kalow moved out of the insured premises . . . Kalow regularly visited Boudreau at the insured premises and occasionally spent the night there, but Kalow did not live there. Kalow lived with her husband at another location. Boudreau, on the other hand, lived with her minor son and boyfriend at the insured premises.

On appeal, the Pours argue that, "after incorrectly determining that Roland Pour, Sr.'s Champlin home was not a 'residence premises'," the district court determined that, "because Pour and his sons 'did not dwell together as a family under the same roof,' they were not residents of the same household." Minnesota courts have recognized that a relative can reside in more than one household and therefore an adult child of the named insured can be considered an insured relative even if they

-15-

do not live under the same roof if they "enjoyed the intimate informal family relationship indicative of a legal residency." See Viktora, 318 N.W.2d at 707. We reject this contention.

The Pours misstate or misinterpret the district court's understandably cryptic discussion of this issue. The court determined that the Champlin home was not Pour Sr.'s "residence premises" at the time of the fire because he was not residing there, not because he was not the named insured or the home would not be the "residence premises" if he did reside there. The district court then applied the Viktora line of cases and concluded Kmontee and Roland were not insured relatives because they did not "dwell together [with Pour Sr.] as a family under the same roof," *whether or not* the father and his sons (and other relatives then living in the home) "enjoyed the intimate informal family relationship indicative of a legal residency." As the Court explained in Viktora, this only becomes an important question *if* the named insured and the relatives at issue *did* "dwell together as a family under the same roof." 318 N.W.2d at 707 (quotation omitted).

On this second question, the Minnesota Court of Appeals ruled in its recent Cates decision:

> [A]ppellant cites a case from the Eighth Circuit and cases from other states to support the proposition that a named insured and proposed insured need not live together under the same roof in order for the proposed insured to be a member of the named insured's household. Not only are these cases non-binding precedent and distinguishable, they also represent a significant departure from Minnesota's well-established precedent that defines household and household residency in terms of "dwelling together as a family under the same roof." Viktora, 318 N.W.2d at 707. We will not depart from this precedent.

-16-

2009 WL 305510, at *5 (other citations omitted).  Applying the proper standard for deciding a question of Minnesota law when there is no binding Minnesota precedent, we predict that the Supreme Court of Minnesota would likewise follow its prior decisions and resolve this issue the same way the Minnesota Court of Appeals did in <u>Cates</u> were the issue squarely presented.  We also predict that, if the issue were presented to the Supreme Court of Minnesota, it would conclude that the undisputed facts in this summary judgment record establish that Kmontee and Roland were not insured relatives even if it applied the analysis urged by the Pours.

For the foregoing reasons, the judgment of the district court is affirmed.

_____